The second count charged the defendant with an intent to defraud "the corporation of the State Bank of North Carolina," and with passing as true, to William Erwin (who was agent of the said corporation) "a false, forged, and counterfeited bank note, purporting to be a note issued by order of thepresident and directors of the Farmers Bank of Virginia, which said note, last above mentioned, is in substance as follows, to wit:" The note as set out in this count appeared to have been issued by the president, directors, and company of the Farmers Bank of Virginia, payable to "C. H. Johnston."
On the trial below, the bill offered in evidence showed the name of the payee to be spelled C. H. Johnston. It was objected by defendant that there was a variance between the bill as set out in the indictment and that offered in evidence, and that therefore it should not be introduced, but the court overruled the objection and the bill was read to the jury.
The passing of the bill by the defendant to Erwin as agent of the State Bank was proved, and it was also proved that the bill was originally for five dollars, and had been altered to a bill for fifty. In order to show that defendant knew the bill to be counterfeit (a fact charged in the indictment, and material in constituting the crime under the act) the State called on witnesses to prove acts and declarations of the defendant at different periods previous to this transaction in relation to other
counterfeit bank notes, as circumstances to show his general acquaintance with bank notes and his skill in ascertaining whether they were genuine. The evidence was objected to on the ground that it must be confined to notes of the same kind, or purporting to have been issued by (250) the same bank as the one now in question. The court refused so to restrict the evidence. A witness, Terrell, then proved that twenty years or more ago he was intimate in the defendant's family, and defendant had on one occasion taken the witness upstairs and showed him in a chest a large bundle apparently of bank notes, in sheets and not signed, and observed to him that they were remarkably well executed and that a young man of character might make his fortune with them. It was further proved by two witnesses, Dalton and Lynch, that a tree had been seen in a secret place near defendant's house with a hole bored through it and some small flat blocks near it, and at the same place was a churn and a quantity of paper in the state of pulp; that the defendant had said that he had a way of making money, not however, from his farm. Other witnesses proved that the defendant had been repeatedly seen at various times in the possession of large quantities of bank notes, and that he had also declared he was in the habit of making spurious money; that he could *Page 145 
at any time procure counterfeit money that could not be detected, and that the proper mode of altering bills was to extract the impression of the number from the bill, and to make a new number with a different plate. To witness with whom defendant had been intimate he had made these declarations, and in paying one of them money at different times he had said that particular bills, which he exhibited, were not good, and that therefore he would not pass them to him. Mr. Roane, a gentleman of the bar, testified that shortly after his coming to the bar, and when almost a stranger in the country, he had on some occasions been employed by the defendant to conduct suits for him, and that it was the habit of the defendant, after talking to the witness relative to the suits, voluntarily to make remarks as to the suspicious entertained of his (defendant's) counterfeiting; that on one occasion he said he could procure the services of master workmen, and, to convince the witness, produced a letter which he said was from a workman who had quarreled (251) with his employers, Murray, Draper, Fairman Co., and who had offered to execute plates for the defendant, and as a specimen of his abilities had forwarded to the defendant a bill for five dollars; defendant then took a bill out of the letter; said it was a counterfeit, but notwithstanding it was very well executed; the defendant also said that he was in the habit of making and passing bad money. The agent of the State Bank proved that in 1814, when counterfeit notes of the Bank of Cape Fear for three dollars, signed with the name of John Hogg as cashier, were in circulation, he had refused to take any notes for three dollars on that bank; that, having declined receiving one offered by some person, the same note was brought back to the bank in a few weeks, accompanied by a letter from the defendant, which informed the witness that he "might receive this note, for none of the three dollar notes with the name of Joshua Potts were counterfeit," and added that the information might be useful to witness.
The court, in addressing the jury, called their attention to the principle upon which most of the evidence offered had been permitted to go to them; that it being incumbent on the State not only to prove the passing of the bill as charged and its falsity, but also to bring home to the defendant the knowledge of the bill's being counterfeit, and the intent to defraud as charged in passing it, they were to look more particularly to the part of the evidence relating to the passing of the note and more immediately connected with it, but that in ascertaining the knowledge of the defendant that the note passed was counterfeit they were at liberty also to look to the other acts and declarations of the defendant as going, in connection with the evidence more *Page 146 
immediately relating to the transaction, to show them how far he might have been deceived as to the genuineness of the note in question, (252) or, on the contrary, as going to satisfy them that he must have been so well acquainted with bank paper that he could not well have been ignorant of the true character of this bill. That, in relation to these acts and declarations of the defendant, the more distant and detached they were in point of time the less relation they had to the transaction about which the jury were inquiring, and the less weight ought they to have in forming their opinion, and more particularly in relation to the evidence of Terrell, Dalton, and Lynch; that circumstances so detached must be exceedingly light, and that no part of the evidence in relation to the defendant's previous conduct or declarations was to be considered by them as offered for the purpose of proving that he had committed the crimes or acted improperly on other occasions, but only as circumstances which might aid the jury in ascertaining whether the defendant knew the note in question to be counterfeit at the time he passed it.
The jury found the defendant guilty; a motion was made for a new trial, which was refused, and the court pronounced judgment against the defendant, from which he appealed. This Court requested the defendant's counsel to confine his remarks to the grounds on which he relied for a new trial.
The first question arising in this case is whether a new trial should be granted on account of the introduction of improper testimony on the trial below. The inclination of the mind of a majority of the Court is that it should not, and that impression is produced from the principles laid down by Foster High Treason, 245-6, and the cases read from 1 Bos. Pull., new series, 92, and 1 Campbell, 323. These authorities seem to go the length of proving that where an offense consists in a knowledge of the thing done to be unlawful, evidence may be given to bring home that knowledge to the prisoner, although a disclosure of other facts and transactions for which the defendant is not then on trial may be the consequence. But such disclosure should not prejudice the prisoner; his moral character should be sacred under the maxim that every citizen is presumed to be innocent until the contrary appears, and that presumption ought to be done away with only by evidence proving circumstances connected *Page 147 
with the commission of the offense for which the prisoner is then on trial. For instance, if it were given in evidence that the prisoner had counterfeited bank notes, this evidence might be used to show that in all probability he had a knowledge that the note which he was charged with passing was a counterfeit note; but not to show that because he was wicked enough to forge bank notes at one time with an evil intention, it was to be presumed that he was wicked enough at another time knowingly to pass as good a counterfeit note. The quo animo with which he passed the note is to be collected from the concomitant circumstances. The ability to commit the crime may be shown from other distinct facts; the intention with which the thing was done (charged as a crime) must be proved only from all the circumstances of the case which attended the doing it. For these reasons, I think a new trial should not be granted.
One question that is brought before the Court, by way of arresting the judgment, is the affidavit made for the removal of the trial of the indictment from Burke to Lincoln. The first act on this subject was passed in 1806, ch. 693, sec. 12. That act declares that (259) a removal shall take place when a party states on oath "that there are probable grounds to believe that justice cannot be obtained in the county in which," etc. In the year 1808 another act was passed on the same subject, ch. 745. That act declares "that no cause, civil or criminal, which is or may be pending in any of the Superior Courts in this State shall be removed to the Superior Courts of any other county, unless on oath made, in which the facts whereon deponent founds his belief that justice cannot be obtained in the county where the suit is pending shall be set forth, so that the judge may decide upon such facts whether the belief is well founded." The affidavit for removal in this case states that deponent believes that the State cannot have a fair and impartial trial in the county of Burke. I think this affidavit falls short of the act in 1808, because the facts on which deponent founds his belief are not set forth; of course the Superior Court could not decide upon them. It was that the court might have it in its power to do so that the act of 1806 was amended by the act of 1808. The prisoner had a right to be tried in Burke, where the offense is charged to have been committed, unless the trial was removed to Lincoln in that way (and in that only) which the law points out. The affidavit for removal did not set forth the facts on account of the existence of which the trial was prayed to be removed; I think that the objection founded on that omission a good one. If such facts had been set forth, the judge of the Superior Court, and he alone, must have decided on them. *Page 148 
Another objection is made to the indictment, and is drawn from the act of Assembly on which this prosecution rests. Laws 1819, ch. 994, declares that if any person shall pass any false, forged, or counterfeited bill or note, purporting to be a bill or note issued by order of the (260) president and directors of any bank or corporation within the State, or any of the United States or territories thereof, every person so offending shall, etc. The charge here is that the prisoner passed a counterfeited bank note purporting to be issued by the president, directors, and company of the Farmers Bank of Virginia, without setting it forth or making any averment that there was any law in Virginia establishing or creating such bank, or without averring that such bank had any legal existence. The banks of this State owe their existence to public laws, of which we are bound ex officio to take notice; but the laws of Virginia, as to this purpose, are foreign laws, and must be made to appear by proof. I do not think that the Legislature intended, by this act, to guard against the counterfeiting or passing the paper of voluntary, self-created unchartered corporations or banks, but left the punishment of such offenses to the law as it stood before with regard to other forgeries. But as to this objection I give no positive opinion.
It has also been objected that the note shown forth in evidence is not the same as the one set forth in the first count, because the one set forth in the indictment is payable to Ch. Johnson, and the one offered in evidence is payable to C. H. Johnston. I am inclined to think the variance fatal as to the count. Other objections have been taken in arrest of judgment but I deem it unnecessary to consider them in detail, because of the reasons already given in respect to the objection made to the affidavit of removal. I think the judgment ought to be arrested, and not pronounced by the court below against the prisoner.