Ranney, J.
The record in this case presents but a single question. The plaintiff in error was charged with the crime of forgery, and found guilty upon the first count of the indictment preferred against him. This count averred that the plaintiff, with others, “ did falsely utter, publish, and put off to one George Jones, with intent then and there to defraud the said George Jones, a certain false, forged note, as a true and genuine note of Still Randolph, given for the payment of seven hundred and fifty dollars, and which aforesaid forged note then and there, was of the purport and effect following, to wit.” Then follows what appears to be a perfect copy of such an instrument.
The objection is, that the count does not profess to sot forth a literal copy of the instrument alleged to be forged; and it is claimed, for this reason, to' be bad.
Perhaps no rule of criminal pleading is better settled than that, in all cases, where the fabrication of written instruments constitues the gist of the offense, as in forgery, libel, and the like, the indictment must show upon its face that a literal copy of the instrument is set forth, in order, as stated by the court in McMillen v. The State, 5 Ohio, 269, “ that the court may determine advisedly whether the publication of it constitutes the crime inhibited by the *81 law.” As is added in that case, “ all the precedents are so; and so are the authorities.” Tho only recognized exceptions to this rule occur in cases where the instrument is in possession of tho accused, destroyed, or for some other reason beyond tho roach of tho government, and can not, therefore, be laid before the grand jury. And in all such cases tho excuse for not setting it forth must be distinctly averred in the indictment and proved upon the trial.
*If no such excuse exists, it must be made to appear that a litoral copy is given, by the use of such words in the averment preceding its insertion, as in their usual and legal sense will make that fact manifest, and plainly imply that a correct recital is intended. Although the word “ tenor ” is generally employed for this purpose, yet no prescribed form of expression is indispensable; it is enough that it intends and professes equal exactness. Hence, “ as follows,” “ that is to say,” 11 in tho words following,” and the like, have all been held to import an accurate copy, and sufficient.
That the words “ purport and effect ” do not import it, but have an entirely different moaning, both in ordinary use and legal signification, has been held as often as tho question has been made in the courts of England and this country, for nearly two centuries, as appears from the best elementary authors and reported cases.
In 3 Chitty’s Criminal Law, 1040, it is said : “ Every indictment for forgery must sot forth tho instrument charged as fictitious in words and figures, in order that the court may be able to judge from the record whether it is a document in respect to which forgery can be committed. . . . The recital of the instrument is usually prefaced by the words, ‘ to the tenor following,’ which imports an exact copy; but the words ‘ as follows ’ are sufficient ; they intend the same and profess the same exactness. Tee word ‘ tenor ’ imports an exact- copy; the word ‘purport ’ means no more than the substance of the instrument.”
Archibold (Crim. PI. 42), after laying down thesame doctrine, proceeds to state the effect of professing to set forth only the substance of the instrument, thus: “If the recital of an indictment be introduced by the words ‘to tho effect following,’ or ‘ in substance as follows,’ and the nature of the case require a literal copy to be set forth the defendant may demur, move in arrest of judgment, or bring a writ of error."
Wharton, a recent American author on criminal law, treating *82 upon the same subject, and fully concurring in these views, says: “ Purport, it is said, means the substance of’an ^instrument :as it appears on the face of it to every eye that reads it; tenor means an exact copy of it. According to the purport and •effect and in substance, are bad.'
This definition of the word “ purport ” is taken from the opinion of all the judges in England; delivered by Justice Butler, in Gilchrist’s case, 2 Leach, 657; in which it became important to distinguish the purport of the instrument, as it appeared upon its face, from its legal import and effect. Three separate and distinct considerations enter into the structure of every instrument of writing, which can be made the subject of forgery. First. The precise language in which it is expressed ; this is its tenor. Second. What it appears or professes to bo, in all substantial particulars, as disclosed upon its face; this is its purport or substance. Third. Its legal effect, or the operation the law will give it, when enforced. To illustrate by an example drawn from our own law, suppose a note given by A to B, for $1,000, with twenty per cent, interest, without any time of payment inserted. Its tenor embraces the words and figures employed in writing it; its purport or substance is a promissory note of $1,000, with twenty |>er cent, interest; and its legal effect, a promissory note for $1,000, with six per cent, interest, and payable on demand.
I do not deem it necessary to make further extracts from the ■elementary authors, but content myself with referring to 2 East’s Pleas of the Crown, 983 ; Robinson’s Forms, 518; Russell on Crimes, .372; Lewis’ United States Criminal Law, 648; 2 Bouvier’s Law Diet. 392, 556.
These authors will be found fully sustained by the adjudged cases, commencing as early as Rex v. Beares, 1 Ld. Raym. 464, decided by the King’s Bench in 1698; Lloyd’s case, cited 1 East, 173; James Mason’s case, 1 East, 183; Wright v. Clements, 3 B. & Ald. 503; State v. Atkins, 5 Black. 458; State v. Twitty, 9 N. C. 248; State v. Jones, 1 McMullen, 236; State v. Parker, 1 Vt. 298; State v. Gustin, 2 South. 746; State v. Potts, 4 Halsted, 26; Com. v. Sweeney, 10 Serg. & R. 173; State v. Brownlow, *7 Humph. 63; McMillen v. The State, 5 Ohio, 269; Stephens v. State, Wright, 73.
The only deviation from these established rules, to be found in the books of precedents, is one prepared by Davis, a former solici *83 tor-general of the State of Massachusetts, and which, at an early day, came into very general use in that state; and from which, unfortunately, this indictment seems to have been taken. This circumstance would seem to have induced a more urgent necessity there than elsewhere to sustain the practice, if it could have been done. And yet we find the Supreme Court of that state, true to principle, discarding the innovation as often as the question has been made. In Commonwealth v. Haughton, 8 Mass. 110, the question arising whether the instrument should be set forth in words and figures, and Mr. Davis being present, was called upon by the court for his opinion. He stated that “ he had uniformly drawn indictments for this offense in the manner here used.” The court, however, did not concur with him as to sufficiency, but held that it must be literally set forth, and stated the reason to be, that “ a particular description of the instrument may enable the party •charged more effectually to prepare for his defense, and thus may become a shield to innocence.”
The case of Com. v. Parmenter, 5 Pick. 279, is cited and much relied upon by counsel for the state, It was an indictment for forging a promissory note, which was set forth according to its purport and effect. A variance was insisted upon between the note as set forth and the one produced upon the trial. But the court overruled the objection, and held that such an allegation did not import a literal copy; and, therefore, that the variance between the word “ promised ” and “promise” was not material. It was probable the decision was right in any view of the question, as the word was not substantially changed. No question was raised upon the indictment; but it is not a little remarkable that the court ■should have given the very reason for admitting the evidence which would be fatal to it; and it may, ^therefore, with some force, be inferred that they regarded the indictment as sufficient. But, however this may have been, its value as an authority in that court has been entirely overthrown by the very recent cases of Commonwealth v. Wright, and Commonwealth v. Tarbox, decided in 1848, and reported in 1 Cush. 46, 66. These were indictments for libel, in which the libelous matter was admitted to be literally set out, with marks of quotation ; but which, in the recital preceding its insertion, was alleged, “ according to the purport and effect, and in substance as follows.” The court held it to be a general rule, in all cases where the gist of the charge arose from the pub *84 lication of a written instrument, that the indictment must not only contain a literal copy, but must also profess to set it out—that the words ‘ purport and effect ’ did not so import, and that marks of quotation were not sufficient to indicate it.”
In speaking of Davis’ Precedents, and Com. v. Parmenter, which were both pressed upon their-attention, the court say : “ The note in Davis’ Precedents does not appear to be supported by the authority to which he refers; and the case of Commonwealth v. Parmenter was evidently decided without much consideration. The correctness of the practice, it is true, seems to have been taken for granted ; but the precise question here raised does not appear to have been suggested to the court, and the verdict in that case could not have been sustained for other reasons, which were assigned and relied upon by the court, in setting the verdict aside. Under those circumstances, we think that that case ought not to control the uniform current of the English decisions, supported by respectable American authorities.”
It is suggested that the words “purport and effect” may be stricken out as surplusage, leaving the words “ following, to wit,” which will import a literal copy. The same attempt was made and disallowed in the case last cited. It is certain that surplusage will riot vitiate the pleading in which it is found ; but equally certain that no words can be regarded as such, which are descriptive of the identity of that which is ^legally essential to the charge in the indictment. 2 Russ, on Crimes, 788. It is legally essential to this charge to state in what manner the forged paper is set forth. This is stated in this indictment by words importing that only the substance is given. Those words are not, therefore, unmeaning and impertinent, but effectually rebut the idea that a literal copy is intended to be set forth. They perform the office intended in an essential averment; but fall short of making the averment what the law requires it to be.
But it is said the rule, at best, is purely technical and without reason, and one upon which the authorities are conflicting; and we are invited to disregard it. We have carefully examined all the cases cited by the prosecuting attorney, found in the brief, very diligently and carefully prepared by him, and can not find that any such conflict exists. Indictments are found in the books of reports, in which this defect existed, where no question was raised upon it, and, of course, no decision had. But the case of Common *85 wealth v. Parmenter, overruled as it is by the court that made it( is the only one that we have been able to find, which, even by .strained implication, can be used to sustain this indictment.
The rule which requires the indictment to show upon its face that the forged instrument is literally set out, is, it is true, one of ■considerable strictness, but not without reason and good sense for its justification. It relates entirely to. the degree of certainty necessary in charging crime upon the accused. The law punishes with great severity the fabrication of certain instruments specifically named, but does not - extend to others. To enable the court to see with certainty, both before and after conviction, that the accused has justly incurred the penalty, it becomes very proper, if not indispensably necessary, that the whole instrument should be .spread before it, in order that the whole maybe construed together. If the substance only is allowed to be shown, what assurance can we have after conviction that it may not have been misconceived 9 It is very true the law provides a. method for getting the whole upon the record by bill of exceptions; *but we are to remember that the ignorant, poor," and unfriended are quite as likely to be charged with the crime, as those who have intelligence, friends, .and ability to protect their rights at the trial. Nothing marks more clearly the enlightened civilization of a people, than the jealous care with which they protect the life, liberty, and personal ■security of the citizen in the administration of the penal code.
But suppose the rule too strict; what power have we over it? ¥e do not make the law, and can not. Our plain duty is to administer it as we find it. The accused had the constitutional right •“to demand the nature and cause of the accusation against him;” and before he could be deprived of his liberty, to be tried “ by due course of law,” as it was then prescribed and established.
The law then required the “accusation against him ” to be more specific than this indictment is found to be. However guilty he may be, he has not been legally convicted, and the judgment must therefore bo reversed.

Judgment reversed, and cause remanded.