## STATE v. ROSE.

(Filed December 20, 1901.)

1. EVIDENCE—*Competency—Motion—Threats.*

   Evidence that the prisoner had threatened to kill the deceased and had accused him of having reported blockade still of prisoner, is competent as tending to show threats and motive.

2. HOMICIDE—*Evidence—Murder in First Degree.*

   Under the evidence in this case the trial judge properly charged that the prisoner was guilty of murder in the first degree or nothing.

3. NEW TRIAL—*Judge—Discretion—Verdict Against Weight of Evidence.*

   The granting of a new trial because the verdict is contrary to the weight of evidence is discretionary with the trial judge.

4. INSTRUCTIONS—*Case on Appeal.*

   The court holds that in this case the charge of the trial judge fully complies with the law.

INDICTMENT against John H. Rose, heard by Judge *E. W. Timberlake* and a jury, at September Term, 1901, of the Superior Court of WILSON County. From a verdict of guilty and judgment thereon, the defendant appealed.

*Brown Shepherd,* for *the Attorney-General,* for the State.
*D. Worthington,* and *S. G. Mewborne,* for the defendant.

CLARK, J. The prisoner is convicted of the murder of Thomas Farmer. There was evidence that the prisoner had threatened to kill the deceased "if he caught him messing round his still," that "if he caught him on his side the road he would kill him before he got back." The witness further stated, over objection and exception by prisoner, that the still was a blockade still, and that the revenue officers came

and took it; that he had heard prisoner say that the revenue officers got it, and that the deceased was the one who had reported the still to them. This evidence was competent, as tending to show threats and motive.

Bennet Wheeler testified that he and the deceased were riding along the road in a buggy, when they were shot from ambush from the left side of the road; that Farmer, who was on that side of the buggy, was killed, and witness was shot in the knee, breast, arm and face; that he looked up and saw the prisoner run through the woods with a gun in his hand; that later he went back to the place and pointed out to others where he saw the man run; "a bush was cut down right by the side of the stump. It is about 15 steps from where we were shot to the stump, and about the same distance from the place from where I saw the man run. Rose was right plain. I saw him. He started to run. I didn't see anybody fire the gun, but I saw the prisoner run from the stump from where the shot came. He ran to the left, through the woods. He had just got up and started when I saw him. He was right at place fixed to shoot from. He had on a light-colored hat and no coat. As soon as I jumped out of the buggy and stopped the mule, I saw him run." There was corroborative evidence as to the condition of the spot, that from the stump one could see to fire at men in the buggy, a place having been cleared out by cutting down the bush; that a man running as described by witness could be seen from the place where he said he stood after getting out of the buggy; that this had been proved by actual experiment, that standing where Wheeler said he stood a man raising up from behind the stump could be seen and recognized; that the prisoner had that day tried to buy "double B" shot, such as were found embedded in the buggy; that he was seen not far off that afternoon, and the like.. One of the witnesses for the defense testified on cross-examination that he saw the

prisoner cross the road three-quarters of a mile from the place of the homicide about 5:30 o'clock of the same evening Farmer was killed, and that he had on a white hat and no coat. Another witness for the defense testified he had heard prisoner say that if he knew Farmer had reported his still he would whip him.

The case states that after explaining fully the law of homicide, the Court said: "The counsel for the prisoner, in his argument to you, said that under the evidence in this case you must either return a verdict of not guilty, or guilty of murder in the first degree, and the Court charges you that this is the law of the case." Singularly enough, his counsel now contend that this is error. But we think it is correct, as is also the further charge, excepted to, that if, after considering all the circumstances carefully and deliberately, in connection with all the evidence in the case, the jury "are satisfied, after having done this, beyond a reasonable doubt, that the prisoner slew the deceased as alleged by the State, then it would be your duty to return a verdict of murder in the first degree; but if not so satisfied, it would be your duty to return a verdict of not guilty."

All the evidence tends to show that the killing was done by someone "lying in wait," which comes expressly within the statutory definition of murder in the first degree. There was no evidence of an altercation or a killing under any other circumstances. If the prisoner was the man who fired the fatal shot, he was guilty of murder in the first degree, and if this was not shown beyond a reasonable doubt, the jury should, and under the Judge's charge would, have acquitted the prisoner.

The first ground of exception to the refusal of a new trial is "because the verdict was contrary to the weight of the evidence." This was in the discretion of the Judge below, and is not reviewable on appeal. *Edwards v. Phifer*, 120 N. C.,

37——129

405, and numerous cases there cited; *Benton v. Railroad,* 122 N. C., 1007.

The second, fourth and fifth exceptions have already been disposed of. The third exception is "Because the Court failed to state the contentions of the prisoner in his charge to the jury. The Court did not state the contentions of either side, other than appears herein, and no request was made that it be done." The charge does not appear to have been sent up in full, but therein the Court refers to the contentions of prisoner's counsel, charges fully the law, recapitulates the evidence, and directs the jury's attention to the principal point, to-wit, that the jury must acquit unless satisfied beyond a reasonable doubt that the prisoner slew the deceased as alleged by the State, the uncontradicted evidence being that the deceased was killed by someone lying in wait. The prisoner's contention was solely that he was not the man. The jury declared themselves satisfied by the evidence beyond a reasonable doubt that he was.

We see no error of which the prisoner can complain.

No Error.