# Wilson v. The State.

## Murder.

(Decided Jan. 17, 1911.  54 South. 572.)

1. *Jury; Grand Jury; Qualifications; Officers*—Except as prescribed by section 7239, Code 1907, the qualifications and competency of grand jurors are to be determined by the judgment of the jury commissioners, hence, a juror need not be a qualified elector, as section 1467, Code 1907, has no application to jurors.

2. *Same; Disqualification; Objection.*—Under section 7572, Code 1907, no objection can be taken to a grand jury on the ground that a member thereof was not legally qualified; hence, an objection that members of a grand jury were not at the time of organization of the grand jury qualified electors, if going to their qualifications when drawn or organized, cannot be considered.

3. *Same.*—Sections 7304, and 7572, Code 1907, are not in conflict and each has a field of operation; the first section relates to the conduct and competency or qualifications of grand jurors in specific

[Wilson v. The State.]

instances, while the latter section relates to the original drawing and organization.

4. *Same.*—The provisions of section 7304, Code 1907, are for the benefit of state, and the fact that relatives of the accused were permitted to participate in the finding of an indictment is not prejudicial to the accused, and hence, must be disregarded in determining whether a reversal should follow, in accordance with the provisions of section 6264, Code 1907.

5. *Same; Special Venire; Manner of Drawing.*—A special jury drawn for service prior to the first Monday in January, 1910, is properly drawn from the box filled by the jury commission authorized prior to the passage of Acts 1909, p. 305; and under the authority of section 7242, Code 1907, such commission had authority to refill the jury box whether the same had been exhausted or not.

6. *Same.*—Sections 7265, and 7269, Code 1907, are in pari materia, and must be construed together, and when so construed the names of the special jurors drawn are properly placed in the jury box, and the accused is entitled to the benefit of all the jurors present who belong to the venire except jurors engaged in the consideration of another case.

7. *Appeal and Error; Harmless Error; Evidence.*—The refusal to permit a defendant to prove a fact which will do him no good or give him any meritorious exceptions, is harmless.

8. *Same; Instructions.*—Where the undisputed evidence showed that the killing was with a deadly weapon and the accused relied solely on self-defense, a charge as to the burden of proof on admission of an intentional killing was not prejudicial to the defendant, although it failed to include the proposition that the killing was with a deadly weapon.

9. *Trial; Taking Instructions to Jury Room.*—When the court has reduced its general charge to writing as required by section 5363, Code 1907, the jury may take such charge to the jury room on retiring to consider the case.

10. *Evidence; Hearsay; Declarations of Deceased.*—Although the accused testified that the deceased assaulted him with a pistol he may not show by declarations of the decedent the fact that the decedent owned the pistol at or near the time of the difficulty, even for the purpose of rebutting testimony of the state tending to show that deceased owned no pistol, since such evidence is hearsay.

11. *Same; Judicial Knowledge; Common Knowledge.*—The courts, as a rule take judicial knowledge of facts that are common knowledge, such as the nature and characteristics of domestic animals.

12. *Same; Opinion Evidence; Habit of Animals.*—One who has had fifty years of experience with mules can testify that it was their nature and habit to take fright when passing a point where they had been previously frightened.

13. *Homicide; Evidence.*—Where the theory of the state was that the defendant had procured a pistol with which to kill deceased, it was competent for the state to show by a witness that he had traded a cheap pistol belonging to the defendant for another and that the pistol obtained in the trade was turned over to the defend-

[Wilson v. The State.]

ant as tending to show that the pistol the witness received was for the defendant and was turned over to him.

14. *Same.*—Where the state's theory was that the accused was at or behind a stump when he shot deceased, it was competent to show the size of the tracks found near the stump, and the size of the shoes worn by the appellant, although the witness could not give the exact size of either the shoes or the tracks, and although the tracks were not discovered until the morning after the killing, and after many people had visited the spot.

15. *Same.*—Where the theory of the defendant was that the deceased assaulted him with a pistol, and the state introduced evidence tending to show that deceased did not have or own a pistol, the defendant was entitled to show by proper evidence that the deceased owned a pistol at or near the time of the difficulty.

16. *Same.*—Where the theory of the state was that the defendant was at or behind a stump when he shot the deceased, and that deceased was riding a mule at the time, it was competent for the state to show that the mule became frightened and shied when subsequently being driven past the stump, although it was not shown that the mule had not previously taken fright when passing it.

17. *Same; Threats of Decedent; Self-Defense.*—Where there was a conflict in the evidence as to who was the aggressor, threats made by the deceased against the defendant are admissible as shedding light on the issue of who provoked the difficulty.

18. *Same.*—Where the defendant relied on self-defense, the fact that deceased had threatened to kill defendant on the happening of a certain event may be shown, although the event had not happened.

19. *Same; Self-Defense.*—One accused of murder need only establish self-defense to the extent of generating a reasonable doubt of guilt.

20. *Same; Charge as to Lower Offense.*—Where the state's theory was that the defendant was guilty of murder, and the defendant relied on self-defense, there was no evidence justifying a charge of manslaughter.

APPEAL from Chilton Circuit Court.

Heard before Hon. W. W. PEARSON.

Joe Wilson was convicted of murder, and he appeals. Reversed and remanded.

TIPTON MULLINS, for appellant. The demurrer of the state to the motion to strike the indictment ignores sections 7304-5, Code 1907. Section 7572 of the Code has no application to questions arising under those two sections. The motion raises a question as to the or-

ganization of the grand jury at the time the indictment was found, not covered by section 7572.—*Nordan v. The State,* 143 Ala. 13; *Osborn v. The State,* 154 Ala. 44. It is insisted that a grand juror is an officer of the state and therefore, he must be a qualified elector.— Subd. 1, sec. 1467, Code 1907; *Andrews v. The State,* 78 Ala. 483; *Michael v. Th State,* 163 Ala. 426; *U. S. v. Hartwell,* 6 Wall. 385. Counsel cites other authorities to show that the office of grand juror is an office of the state or county. The court erred in permitting evidence as to the tracks near the stump and the size of the shoes worn by the defendant.—*Livingston v. The State,* 105 Ala. 127; The state had introduced evidence tending to show that the deceased had no pistol and owned none at the time of the difficulty, and the defendant should have been permitted to rebut this testimony by declarations of the deceased.—*Humes v. O'Brien,* 74 Ala. 64. There was conflict as to who was the aggressor, the defendant relied on self-defense, and hence, the threats made by the deceased against the defendant were admissible. The court takes judicial knowledge of the characteristics of mules—17 A. & E. Enc. of Law, 900-1. The jury should not have been permitted to take the general charge to their room.—*Orr v. The State,* 117 Ala. 69; *Ragland v. The State,* 125 Ala. 12. The record fails to show that the court fixed a day for the trial of the defendant.—*Burton v. The State,* 115 Ala. 1; *Linnehan v. The State,* 116 Ala. 471.

ALEXANDER M. GARBER, Attorney General, for the State. All of the objections to the indictment were unavailing and without merit.—Section 7572, Code 1907; *Holland v. The State,* 50 South. 215. The accused was not entitled to have the jurors engaged in the trial of another case placed in the box.—*Chamblee v. The Sate,*

78 Ala. 466; *Dorsey v. The State,* 107 Ala. 160. There was no error in admitting testimony of tracks found near the stump, or as to the size of defendant's shoes. —*Busby v. The State,* 77 Ala. 66; *Ethridge v. The State,* 124 Ala. 106. The court properly disallowed the evidence of threats made by deceased against accused.— *Jones v. The State,* 116 Ala. 468. Evidence as to the characteristics or habits of animals was admissible.—1 Green Ev. Sec. 14 B, subd. 6; Sec. 14 G, subd. 4.

ANDERSON, J.—The grand jury was organized under the law as it appears in the Code of 1907. The only qualification prescribed by section 7239 is that jurors must be male residents of the county, over 21 and under 60 years of age. The other qualifications and competency is left to the discretion of the jury commissioners. It is not therefore necessary that a juror must be at the time of service a qualified elector and entitled to vote. Section 1467, in fixing the ineligibility to office, has no application to jurors and who are not such officers as is contemplated by said statute. Indeed, most of the public officers are disqualified or exempted from jury service. If, however, the rule was otherwise, the fact that some of the members of the grand jury were not at the time of the organization of the grand jury qualified electors would go to their qualification when drawn or organized, and section 7572, expressly provides, among other things, that no objection can be taken to a grand jury on the ground that any member was not legally qualified.—*Holland v. State,* 162 Ala. 5, 50 South. 215. It is true that the objection taken in the *Holland Case, supra,* related to the grand jurors as originally drawn and organized, and this court has held that said section 7572 did not relate to defects and re-organizations subsequent to the original organization. *Nordan v. State,*

143 Ala. 13, 39 South. 406; *Osborn v. State,* 154 Ala. 44, 45 South. 666. The motion, however, to strike the indictment is not directed alone to the qualification of jurors at the time of the organization, but sets up an incompetency on the part of some who participated in the deliberations when the indictment was found, some who were specially disqualified under section 7304 of the Code, in that some of them were related to the defendant and did not withdraw, but took part in the deliberations when this case was considered and the indictment was found. There is no conflict between sections 7304 and 7572, but a field of operation for both. Section 7572 relates to original drawings and organizations, and section 7304 relates to the conduct and competency or qualification of grand jurors in certain instances. We do not think, however, that the defendant can complain, if some of his relatives helped find the indictment against him. This much of the statute was intended for the protection of the state, and, if it permitted some of the defendant's relatives to participate in the finding of the indictment, no injury was done the accused, and this is a proper case for the application of section 6264 of the Code of 1907.

The point made against the special venire, that it was drawn from a box that had been filled by the old jury commission, and after the appointment and qualification of the jury commissioners, under Acts 1909, p. 305, is without merit. The box was filled November 9, 1909, and the jury drawn therefrom served prior to the first Monday in January, 1910, and section 17 of the new jury law expressly provides that they shall be drawn, summoned, and impaneled under the old law. The old jury commissioners had authority under section 7242 to refill the jury box, whether the names had been fully exhausted, or not. The statute is unlike the one con-

strued in the case of *Steele v. State,* 111 Ala. 32, 20
South. 648. Nor did the fact that the new jury com-
missioners have authority to act, in the preparation of
lists and filling box prior to January, 1910, supersede or
prevent the old board from drawing or doing all acts es-
sential to the securement of legal jurors, under the old
law, for service to be performed by said jurors prior and
up to the first Monday in January, 1910. The Legisla-
ture intended no gap or chasm in the administration of
the criminal law, by the enactment of the new jury law.

There was no error in placing the special jurors
drawn in the hat, whether they were summoned or not,
as they constituted a part of the venire to try the case.
Code 1907, § 7205. Nor did the trial court err in not
letting the defendant prove this fact, as the proof of
same would have done him no good nor given him any
meritorious exception.

It is true that section 7269 of the Code of 1907, in
providing for the organization of the jury to try a capi-
tal case, requires that the jurors summoned for his trial,
"as well as the names of the regular jurors in attend-
ance," must be written upon slips, etc. This section,
however, is in pari materia with section 7265, and must
be construed in connection therewith, and which said
section 7265 requires that all regular jurors shall be
upon the venire, only when the trial is had during the
week for which the case is set and the special venire is
drawn, and when the case is tried during a subsequent
week the venire shall consist of the special venire drawn
by the court and the regular jurors drawn for said sub-
sequent week and does not include regular jurors in at-
tendance during said week unless they had been pre-
viously drawn as such. Regular jurors in attendance,
but who were not originally drawn as such, not being a
part of the venire to try this case, could not be put

upon the state or defendant, and it was not within the contemplation of the lawmakers that their names should be placed in the box and drawn therefrom in the organization and impaneling of the jury. The defendant's rejected proof failing to show that the regular jurors, whose names were not placed in the box, had been drawn for the week, was properly rejected by the trial court. The defendant should have the benefit of all jurors present, who belong upon the venire. This court has repeatedly held, however, that, when some of the jurors are engaged in, the consideration of another case, the trial court may dispense with them.—*Dorsey v. State,* 107 Ala. 160, 18 South. 199; *Cole v. State,* 105 Ala. 76, 16 South. 762, and other cases. These cases permit this only when the jurors are actually engaged in the consideration of another case, and do not justify the failure to include them merely because they had been impaneled in another case, which had not been tried, and which was not being considered when the capital case was called for trial. As this case must be reversed for other reasons, we will not decide whether the trial court erred in not including the regular jurors, who had been impaneled, but who were not actually considering another case, but will merely suggest that the action of the court in excluding them on previous occasions has been justified on the ground that they were actually engaged in considering another case.

There was no error in permitting the witness Askins to testify that he traded the cheap pistol of defendant for another one with Foshee, and that the pistol he got from Foshee was delivered to the defendant, as it showed that the pistol Askins got in return was for defendant and was turned over to him, and the state's theory was that defendant procured this said pistol for the purpose of using it on the deceased.

There was no error in permitting the witness Downes to testify as to the size of the tracks found near the black stump, as the state's theory was that the defendant was at or behind the stump when he shot deceased, or to give the size of shoes worn by the defendant, as this left it to the jury to decide whether or not the tracks were made by or corresponded with the feet of the defendant, and which differentiates this testimony from that condemned in the case of *Livingston v. State,* 105 Ala. 127, 16 South. 801, and is similar to the character of track evidence upheld in the case of *Ethridge v. State,* 124 Ala. 106, 27 South. 320. It is true there was much to weaken the probative force of this evidence, as the witness did not give the exact size of the shoes making the tracks or that the defendant wore, leaving much room for conjecture and speculation. Then, too, the tracks were not discovered the evening of the homicide, but the following morning, and after many people had been to the scene of the occurrence.

The defendant having testified that deceased assaulted him with a pistol, and the state having introduced evidence to show that deceased did not have and did not own a pistol, the defendant had the right to show that deceased did own a pistol, at or near the time of the difficulty, but he did not resort to the proper evidence to establish the fact. The only evidence offered to show that deceased owned a pistol was by his declarations of the fact, and which was hearsay and properly excluded by the trial court. It is true declarations by one in possession of property are often admitted as part of the res gestæ; but there was no proof that deceased was in possession of a pistol, except by his own declarations.

As a rule courts will take judicial notice of the nature and characteristics of domestic animals as being a subject of general and familiar knowledge. 17 Am. & Eng.

Encyc. of Law, 900. It is no doubt a matter of common knowledge that a mule will shy or take fright when passing a point when it had been previously and recently frightened at said point. The trial court did not, therefore, err in permitting the state to show that one of the mules driven by deceased when killed became frightened and shied when driven or ridden by the black stump in question. Nor was there any error in permitting the state to show by a witness, who had 50 years' experience with mules, that it was their nature and custom to take fright when passing a point where they were previously frightened. The force of this evidence would have been strengthened by proving that this mule did not previously take fright when passing this black stump, and the fact that this fact was not shown might weaken the probative force of this evidence, upon the theory that the mule may have been afraid of the stump, as it is a matter of common notice that horses and mules will often and repeatedly shy at certain things, although having previously passed them without hurt or harm; but the evidence was admissible, and the weight of same was a question for the jury.

Regardless of the rule as to uncommunicated threats by the deceased or party assailed, prior to the leading case of *Roberts v. State,* 68 Ala. 156, it was there settled and has been repeatedly held ever since, that, where there is a conflict in the evidence as to who was the aggressor, threats made by the deceased against the defendant are admissible for the purpose of aiding the jury in determining whether the deceased or the defendant provoked the difficulty or was the aggressor. The trial court properly admitted the evidence of John, George, and Elijah Hays, as to the threats made by the deceased against the defendant shortly before the homicide, and committed reversible error in subsequently ex-

cluding same. It is true these threats were coupled with the condition that they would be carried out only in case the defendant killed the dog of deceased, and there was no proof that the defendant killed said dog, but the fact that the threat was a conditional one, and that the condition never occurred, merely went to the weight and probative force of same and did not render them incompetent or inadmissible. The fact that deceased was threatening to take the life of defendant, even upon certain conditions, was a circumstance of hostility and animus, as a man does not usually threaten to take the life of another, even upon a condition, if there is an ordinary feeling of kindness and friendship between them. As was said by this court, speaking through Clopton, J., in the case of *Cribbs v. State*, 86 Ala. 613, 6 South. 109, in discussing conditional threats or threats that were retracted: "Their probative force is a question for the jury, dependent upon their nature, and the circumstances under which they were made. Such considerations do not affect their admissibility." See, also, 21 Cyc. 922; *State v. Rose*, 129 N. C. 575, 40 S. E. 83; *State v. Adams*, 76 Mo. 355; *Redd v. State*, 68 Ala. 496.

The general charge of the court was in writing, and as provided by section 5363 of the Code of 1907, and the trial court did not err in letting the jury take said charge with them to the jury room.—*Ragland v. State*, 125 Ala. 12, 27 South. 983. Nor did the court hold that this could not be done in the case of *Orr v. State*, 117 Ala. 69, 23 South. 696.

There was no reversible error in the third part of the oral charge to which the defendant excepted. The rule, as to the burden of proof upon admission of an intentional killing would have been more properly stated, if it had included that the killing was with a deadly weapon;

but the undisputed evidence showed that such was the case, and the charge when applied to the facts was free from error. *Gibson v. State,* 89 Ala. 121, 8 South. 98, 18 Am. St. Rep. 96. Of course he does not have to show self-defense beyond a reasonable doubt; but the burden is upon him to establish same to the extent of generating a reasonable doubt of guilt when it is relied upon as a defense.

The fourth exception to the oral charge related to mere statements of the court as to the state's contention or theory of the case, was warranted by the evidence, and was free from error.

Exceptions 1 and 2 relate to the failure to define and discuss manslaughter in the first degree. Whether the trial court could be put in error for omitting such an instruction from a general written charge, or whether or not the defendant should not have asked written charges defining manslaughter, we need not decide, for the reason that the evidence afforded no basis for manslaughter. If the state's theory was true, the defendant was guilty of murder; and, if his theory was the true and correct version of the homicide and the facts connected therewith, the act was done in self defense.— *Rogers v. State,* 117 Ala. 9, 22 South. 666.

While we have not discussed, in this opinion, all the points presented by the record, they have not been overlooked, and those not discussed disclosed no reversible error.

For the error heretofore suggested, the judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and MAYFIELD and SAYRE, JJ., concur.