STATE v. JIM MILLER.

(Filed 21 March, 1923.)

**1. Homicide—Murder—Premeditation—Deliberation—Evidence.**

Where there is evidence upon a trial for murder that the deceased pursued the prisoner and accused him of stealing his corn, and rode in the latter's wagon with him for the purpose of going before a magistrate, and before reaching their destination the prisoner killed the deceased by

pistol shots, and his dead body was found along the road where the prisoner had left him, evidence is competent that upon meeting with the deceased he had uncovered the prisoner's wagon body and found therein corn, hay, and whiskey as tending to disclose conditions that would bear upon the questions of premeditation and deliberation intervening between the time of their meeting and that of the homicide, and sustain a verdict of murder in the first degree.

### 2. Homicide—Murder—Self-defense—Evidence.

Where self-defense is relied upon in the trial for murder, with the prisoner's evidence that he had killed the deceased when the latter had attacked him with a knife, it is competent for the State to show in rebuttal by its witnesses who had examined the body shortly after the homicide that the deceased had no weapon except a pocket knife, which was found closed in the pocket of the deceased.

### 3. Homicide — Murder — Instructions — Premeditation — Deliberation—Cause of Death.

Where the prisoner has been convicted of murder in the first degree, his exception that the charge failed to instruct the jury that it was necessary for the death to have resulted from the premeditation and deliberation of the prisoner, cannot be sustained, when it appears that the jury was correctly instructed as to the principles of murder in the first degree, that the burden was placed on the State to establish guilt beyond a reasonable doubt, and that the death must have resulted from the preconceived purpose to commit the homicide.

### 4. Homicide—Murder—Instructions—Evidence—Request for Instructions—Appeal and Error—Objections and Exceptions.

The prisoner, convicted of murder in the first degree, may not sustain an appeal by exception to the charge upon the element of malice on the ground that the principles of law were not applied to every phase of the evidence, where the instructions correctly stated the principles generally applicable, and the prisoner has not offered prayers for special instructions on the subject of his exceptions.

### 5. Homicide — Manslaughter — Malice — Murder—Evidence—Burden of Proof—Justification.

The unlawful killing of a human being is at least manslaughter, and with the added element of malice it becomes at least murder in the second degree. When the killing with a deadly weapon is shown or admitted, the burden is on the prisoner to show to the satisfaction of the jury such matters as will reduce the offense to manslaughter or excuse the homicide.

### 6. Appeal and Error—Objections and Exceptions—Instructions—Contentions.

An exception to the manner in which the trial judge stated the defendant's contentions is not available to him when taken for the first time after verdict.

### 7. Appeal and Error—Homicide—Presence of Militia—Prejudice.

*Held,* under the circumstances of this case, the appellant from a judgment of murder on the first degree was not prejudiced by the presence of a detachment of State militia in the courtroom when the verdict was returned.

APPEAL by prisoner from *Calvert, J.,* at January Term, 1923, of LENOIR.

Criminal action. The prisoner was prosecuted for the murder of one John Sutton. The homicide occurred on 29 September, 1922, about 7 p.m. The deceased, believing the prisoner had stolen corn from his field, got Arthur Sutton, his cousin, to take him in his car in pursuit of the prisoner, who was driving a one-horse wagon along the public highway in the direction of Kinston. The car soon overtook him, and the deceased went to the side of the wagon and asked the prisoner what he had in it. The answer was, "It is none of your business." The deceased then pushed back some hay that was in the wagon, laid his hands on some corn that had been underneath the hay, and asked the prisoner where he got it. The prisoner said, "From Dary Williams," and the deceased replied, "No, you got it out of my field." The deceased then directed Arthur Sutton to drive on to Kinston and get an officer. After Arthur left, the deceased got in the wagon with the prisoner and told him to go on. The deceased sat in the wagon at the left of the prisoner. After the car had gone the prisoner, with the deceased by his side, went on towards Kinston. After going about two or three hundred yards on the road they got into the highway leading towards Kinston and went about one hundred and fifty or two hundred yards further when the prisoner drew a pistol from his pocket and fired four shots at the deceased. Three shots took effect and death followed almost instantly. Soon afterwards the body of the deceased was found in the road. The deceased at the time had on overalls and had no weapon about his person. When his body was examined by the coroner a knife was found in the pocket of the deceased, but it was not open.

After the homicide the prisoner escaped and was afterwards arrested in Baltimore and brought back to Kinston for trial. Sheriff Taylor testified that the prisoner made a voluntary statement and admitted that he had shot and killed the deceased with a pistol. In this statement the prisoner said that after the deceased got into his wagon they engaged in an "argument," and that the deceased had his knife and "made a grab at him and he shot him, and he fell off the wagon." He also said that the deceased "whacked him across the shoulder" and cut his shirt, but not his flesh.

After the homicide was committed the prisoner drove his wagon back of Duff Humphrey's house in the woods, where it was afterwards found. In the wagon there were about eighteen gallons of whiskey and a small quantity of corn.

The prisoner was convicted of murder in the first degree, and from the judgment and sentence of death he appealed to the Supreme Court.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*John R. Denton for the prisoner.*

ADAMS, J.  The gravity of the judgment pronounced has called for a close and careful scrutiny of the entire record, to the end that the prisoner's exceptions be judicially determined and his legal rights fully protected.  Such inspection we have endeavored to bestow, and have been unable to discover in the trial any error that will warrant referring the case to another jury or interfering with the judgment of the court.

The circumstances attending the homicide are free from complication.  The prisoner was driving his wagon on the highway; he was overtaken, or met, by the deceased and charged with larceny; the deceased got in the wagon and took a seat on the left side of the prisoner; an "argument" followed and the prisoner fired four shots in rapid succession, killing the deceased, whose body soon thereafter was found in the road.  No novel question is presented and no extended discussion is required.

Exceptions 1, 4, 5:  The prisoner's objection to evidence tending to show the contents of the wagon-bed—hay, whiskey, and a little corn—is without merit.  When the deceased and Arthur Sutton overtook, or met, the prisoner the deceased displaced a part of the hay and found corn which he said had been stolen from his field.  If evidence, when offered, is competent for any purpose it should not be excluded; and here the evidence objected to was competent, not only on the question of the prisoner's motive in firing the fatal shots, but on the question of his premeditation and deliberation.  It tended to disclose conditions, all of which were known to the prisoner, and some of which were known to the deceased during the time that intervened between their meeting and the commission of the homicide.  *S. v. Goff,* 117 N. C., 756; *S. v. Rose,* 129 N. C., 575; *S. v. Wilcox,* 132 N. C., 1143.

Exceptions 2, 3:  Arthur Sutton testified that after going in search of the officer, he returned to the scene of the homicide and examined the body of the deceased, not very closely, it is true, and found that he was not armed; and C. T. Savage testified that when he went there he found nothing.  To the admission of these statements exceptions were entered of record.

The prisoner told the sheriff that the deceased while in the wagon assaulted him with a knife; that the deceased "had his knife and made a grab at him, and he shot him."  He did not say the deceased had a pistol.  The court was alert to permit the jury to consider any evidence of an assault upon the prisoner by the deceased with a knife, and instructed them in the law both of manslaughter and of self-defense.  Since the prisoner did not pretend that the deceased had a pistol, in

what way could the admitted evidence be prejudicial? In any event, it was immaterial; and, as Chamberlayne pertinently remarks, "Even where the higher court feels that error has been committed in admitting certain evidence, it will not, as a rule, find prejudice where the evidence admitted was entirely irrelevant, i. e., immaterial. It is obviously difficult to predicate prejudice upon the admission of irrelevant evidence entirely without probative effect." Modern Law of Ev., sec. 174. And substantially the same proposition has been approved in our decisions time after time. Carter v. R. R., 165 N. C., 249; Penland v. Barnard, 146 N. C., 379; Hosiery Mills v. Cotton Mills, 140 N. C., 452.

Exceptions 7, 8: Exception was taken to his Honor's definition of deliberation and premeditation, which was in these words: "Deliberation means to think about, to revolve over in one's mind; and if a person thinks about the performance of an act and determines in his mind to do that act, he has deliberated upon the act. Premeditation means to think beforehand, think over the matter beforehand; and where a person forms a purpose to kill another and weighs this purpose in his mind long enough to form a fixed design to kill at a subsequent time, no matter how soon or how late, and pursuant to said fixed design kills said person, this would be a killing with premeditation and deliberation. . . . In order to constitute deliberation and premeditation, something more must appear than the prior existence of actual malice, or the presumption of actual malice, which arises from the use of a deadly weapon. Though the mental process may require but a moment of thought, it must be shown so as to satisfy the jury beyond a reasonable doubt that the person had weighed and balanced the subject of killing in his mind long enough to consider the reason or the motive that impelled him to act, as to form a fixed design to kill in furtherance of such purpose or motive."

These exceptions are based on the proposition that the court did not specifically instruct the jury that in order to convict the prisoner of murder in the first degree they must find the homicide to have been the direct consequence of premeditation and deliberation. The misconception is in failing to distinguish between a definition of the words "premeditation and deliberation" and facts that are necessary to constitute murder in the first degree. Here his Honor was merely defining these terms, and in another part of his charge he gave the following instruction as to murder in the first degree: "Now the burden of proof is upon the State—that is, before you can return a verdict of "Guilty of murder in the first degree," you will have to find from the evidence and beyond a reasonable doubt that the prisoner killed the deceased not only with malice, but premeditation and deliberation, and the court charges you that if you should find beyond a reasonable doubt that prior to the time

the prisoner killed the deceased he formed a fixed purpose in his mind to kill him, and that pursuant to that purpose he did kill the deceased because of the purpose in his mind, then the court charges you that the prisoner will be guilty of murder in the first degree, and it would be your duty to so find."

The exceptions must be overruled. *S. v. Spivey,* 132 N. C., 989; *S. v. Daniel,* 139 N. C., 549; *S. v. Hunt,* 134 N. C., 684; *S. v. Norwood,* 115 N. C., 790; *S. v. McCormac,* 116 N. C., 1033; *S. v. Covington,* 117 N. C., 834.

Exception 9 is addressed to the instruction as to the law of manslaughter, the particular impeachment being that the court did not apply the law to the evidence. The definition of the word "malice" was given in connection with the explanation of the several degrees of felonious homicide, and the contentions of the State and of the prisoner were reviewed by the court. After stating the prisoner's position with respect to the alleged assault by the deceased with a knife, and after telling the jury that if the prisoner did the killing without malice, but not in self-defense, he would be guilty only of manslaughter, his Honor gave the additional instruction that if the prisoner committed the homicide by reason of anger suddenly aroused, the crime would be nothing more than manslaughter. Of the latter instruction the prisoner assuredly has no just cause to complain. If, as now suggested, he desired that the law should be particularly applied to any special phase of the evidence, it was incumbent upon him to make the request by special prayers for instructions. *S. v. Merrick,* 171 N. C., 795; *S. v. Thomas,* 184 N. C., 757.

Exception 11: In *S. v. Fowler,* 151 N. C., 732, *Brown, J.,* said: "An unlawful killing is manslaughter, and when there is the added element of malice it is murder in the second degree. When the defendant takes up the laboring oar he must rebut both presumptions—the presumption that the killing was unlawful and the presumption that it was done with malice. If he stops when he has rebutted the presumption of malice, the presumption that the killing was unlawful still stands, and unless rebutted the defendant is guilty of manslaughter. This is a fair deduction from the cases in this State. *S. v. Hagan,* 131 N. C., 802; *S. v. Brittain,* 89 N. C., 501, 502." And in *S. v. Lane,* 166 N. C., 333, it was held that the burden is on the prisoner to establish circumstances in excuse or mitigation to the satisfaction of the jury unless they arise out of the evidence against him. See, also, *S. v. Brinkley,* 183 N. C., 720, and *S. v. Johnson,* 184 N. C., 637. The presiding judge charged the jury in accordance with these decisions, but it is argued for the prisoner that the jury may have inferred that he was not entitled to the benefit of the instruction because he had offered no evidence; but this

argument is precluded by the court's application of the instruction to the facts and circumstances which had been disclosed by the evidence, and on which the prisoner relied.

Exceptions 12, 13: The prisoner excepted also to the manner in which the court stated certain of the prisoner's contentions, but this exception is not now available, for the reason that such objection cannot first be made after the verdict is returned. *Phifer v. Comrs.,* 157 N. C., 150; *S. v. Tyson,* 133 N. C., 692; *S. v. Davis,* 134 N. C., 633; *S. v. Kincaid,* 183 N. C., 709.

Exceptions 14, 15: At the request of the local authorities and by permission of the Governor, a detachment of the State militia were in the courtroom when the verdict was returned. There is no suggestion that the jury knew they were there before this time, and so far as the record discloses there is not a reasonable probability that their presence could have influenced the verdict in any respect. If there had been we are assured that the cautious and discerning judge who presided at the trial would have given the matter careful thought when considering the prisoner's motion for a new trial.

A critical review of the record does not disclose reversible error.

No error.