The plaintiff complained for the negligent killing of his intestate by the defendant, a common carrier.
It was in evidence on behalf of the plaintiff, that at the time the injury was received resulting in the death of J. S. Brown, his intestate, the latter was a passenger on the train of the defendant from Greensboro' to Graham station, and the injury was received at Graham under the following circumstances:
One Anthony testified that he and the intestate of the plaintiff were on the train and tried to get off at Graham station; that when near the depot the whistle was sounded for application of brakes and thereupon he and Brown went out upon the platform at the end next the sleeping car, which latter was *Page 496 
the rear car of the train; that when they got on the platform the conductor, Ligon, was present with his lamp in hand and he commenced with one hand to tighten the brake on the platform of the sleeping car, and the witness stood on the platform of the coach next before the sleeping-car and reaching across helped him to tighten the brake; that when the coach on which Brown and witness were passengers was passing opposite the platform at the depot and whilst the conductor and witness were tightning the brake, Brown got down from the platform on to the steps as if about to alight, when the conductor cautioned him not to jump yet, saying the train would get slower; that when about opposite the center of the depot platform, or a little past, Brown still standing on the steps of the car platform, the conductor said, "now is your time, jump," and thereupon Brown immediately alighted on the depot platform and fell down and in some way, the witness could not tell how, got under the train and on the track and was run over and was crushed, so that he died; that at the time of the occurrence the train was moving much slower than before the blow for brakes and had gotten still slower after the joint effort of the witness and conductor to tighten the brakes; that witness alighted immediately after Brown; that he could not tell the rate of speed at which the train was moving but seeing that Brown had fallen as he (witness) alighted, he jumped off, running with the cars rather than at right angles with them, and that he was not able to take up until he had reached the extreme end of the platform; that Brown had under his left arm a stencil plate about the size of the head of a whiskey barrel, between two pieces of very thin plank, and a small satchell of capacity to hold two quarts, swinging from his shoulder by leather straps, both being very light, and also a small book about ten inches by five in size.
Mr. Ligon, the Conductor, testified that when the blow was sounded for brakes before reaching the depot, he went out of the coach to let the witness Anthony, and Brown off, *Page 497 
intending to stop the train; that they followed him, and when they got out, Brown got down on the third or lowest step of the platform as if to jump, and he (the conductor) with one hand tightened up the brake, assisted at the time by Anthony, and whilst the parties were in that position he cautioned Brown not to jump, saying the train would stop, and thereupon Brown got back one step — the middle step; that after this, when passing the platform, being nearly opposite the depot, and seeing that the train was not going to stop along side the platform as he expected, he put his hand on Brown and told him to get down and be ready to get off. Brown at his suggestion, getting down on the lowest step again, and the conductor at the same instant seizing the brake with both his hands and attempting to tighten it; that he did not tell Brown "to jump off, now is your time," that he told him only to get down on the lowest step and be ready to get off.
In answer to a question put by the plaintiff, witness said he saw Brown on the lowest step making signs as if about to jump, and that he did not put his hands on him to prevent him, because he was out of reach, and although within reach of his voice, and he had time and could have cautioned him, he did not caution him with his voice; that Brown jumped a moment after the signs as before stated: that when Brown jumped off, the train was going at the rate of from two to four miles per hour, and that the train did not stop until the extreme hear car had passed the platform some ten feet.
John Hipps, the engineer, testified that he was directed to stop at Graham, and that before reaching the depot he blew for brakes and they were applied, but they did not appear to hold as usual; that the train did not stop in pursuance of the "blow" when it ought to have stopped, and he did not know whether the brakes were out of fix or not, but somehow the brakes did not hold as usual.
Upon this evidence, the plaintiff requested the Court to instruct the jury (amongst other matters) as follows, viz: "That *Page 498 
if the jury should find that the defendant did not stop the train alongside of the platform, and that the conductor whilst passing the platform and when the cars were moving at from two to four miles per hour, directed Brown to alight and he obeyed the direction, he was justified in doing so, and his act in law is not contributory negligence, hindering a recovery."
His Honor declined to give the instruction prayed, but charged the jury that any alightment from the cars when moving was contributory negligence, and in law disabled the plaintiff to recover.
There was a verdict for the plaintiff and from the judgment rendered thereon the defendant appealed.
The intestate of the plaintiff was a passenger under the charge of the agents of the defendant, and he was killed in getting off the train. The policy of the law which is ever solicitous for the protection of human life, requires common-carriers, who have charge of the safety of passengers to use a high degree of care to guard against probable injury. As the *Page 499 
intestate was a passenger on the train it was the duty of the defendant to transport and place him safely at his point of destination.
If the injury sustained was caused by a want of proper care on the part of the agents of the defendant in the performance of this duty, it is primafacie responsible in damages to the plaintiff.
The principle defence relied on in the Court below, was that the intestate by his own negligence or misconduct contributed to cause the injury sustained. The act of the intestate in jumping off the cars while they were in motion at the rate of from two to four miles per hour, was the proximate cause of the injury, and the question is whether he exercised ordinary care under the circumstances. Ordinary care in this case, is, that degree of care which may have been reasonably expected from a sensible person in the situation of the intestate. He had a right to expect that the defendant had employed a skillful and prudent conductor, who would not expose passengers to dangerous risks, and who had experience and knowledge in his business, sufficient to correctly advise and direct passengers as to the proper time and manner of alighting safely from the train.
When the usual signal was given for stopping or slackening the speed of the train, the conductor went with the intestate and Mr. Anthony out on the platform of the car to assist them in getting off safely. If the intestate, without any direction from the conductor, voluntarily incurred danger by jumping off the train, while in motion, the plaintiff is not entitled to recover. If the motion of the train was so slow that the danger of jumping off would not be apparent to a reasonable person, and the intestate acted under the instructions of the manager of the train, then the resulting injury was not caused by contributory negligence or a want of ordinary care. Sherman Rld on Neg., ch. 15 and 27.
The circumstances attending the injury are given in the testimony of Mr. Anthony and the conductor, who were both *Page 500 
present, witnessed the occurrence and had equal opportunity of knowing the facts. Their testimony was conflicting in material points, and it was the province of the jury to determine the truth of the matter, and render a verdict in accordance with the instructions of His Honor on the questions of law arising upon the ascertained facts. We think His Honor erred in refusing to give the first instructions asked for by the counsel of the plaintiff, for if the testimony of Mr. Anthony is to be believed, there was no such contributory negligence on the part of the intestate as to prevent a recovery in this action.
For this error there must be a venire de novo, and it is not necessary for us to express an opinion as to the rights of the parties, if the jury should find that the testimony of the conductor gives the truth of the transaction.
Let this be certified.
PER CURIAM. Venire de novo. *Page 501