St. Louis, I. M. and S. R. R. Co. v. Cantrell.

ST. LOUIS, I. M. AND S. R. R. CO. v. CANTRELL.

| | |
|---|---|
| 37 | 519 |
| 65 | 257 |
| 37 | 519 |
| 70 | 246 |
| 37 | 519 |
| f82 | 507 |
| 37 | 519 |
| 86 | 328 |

1. RAILROADS: *Cars must stop at depot platforms.*
   It is the duty of the conductor of a railroad train to stop the cars at the depot platforms for the safe landing of passengers.

2. NEGLIGENCE: *Alighting from moving train under direction of conductor.*
   A passenger who alights from a slowly moving train at the instance or direction of the conductor, or other agent in management of the train, on whose opinion or judgment in the matter he has the right to rely, and when the risk or danger is not apparent, is not chargeable with negligence.

3. DAMAGES: *For injury from negligent running of railroad train.*
   A passenger on a railroad train, who is injured by the negligent running of the train, or, on account of an insufficient platform at which he is landed, is entitled, as damages, to compensation for the bodily injury sustained, the pain suffered, the effect of the injury on his health, according to its degree and probable duration, the expenses of his sickness resulting from the injury, and of attempting to effect a cure, and the pecuniary loss sustained by reason of inability to attend to his business, or profession.

4. SAME: *Platforms.*
   A railroad company is bound to provide safe and sufficient platforms for the landing of passengers, of sufficient length to afford safe egress to passengers from an ordinary train.

5, VERDICT: *Not impeachable by juror except, etc.*
   The court should not allow an affidavit of a juror impeaching his verdict to be filed, except to show that it was made by lot.

APPEAL from *Clay* Circuit Court.

Hon. L. L. MACK, Circuit Judge.

STATEMENT.

This was an action by the appellee against the appellant for damages for a personal injury sustained, through the negligence and misconduct of the defendant's train conduc-

tor, in causing him to alight from the train while it was in motion. The defendant denied the negligence, and averred that the injury resulted from the plaintiff's own negligence.

The plaintiff was a passenger from Little Rock to Knoble Station, in Clay county, and testified that the train arrived at the station about ten o'clock at night. The conductor went to him and shook him, and told him that was his station—to "hurry, and get off." The conductor passed on to the forward end of the coach—the plaintiff to the rear end—and there met a brakeman, who called out the name of the station, and said to the plaintiff, "hurry, and get off, we are in a hurry." Witness stepped out upon the platform of the coach and saw the depot platform by the light from the car windows, and then stepped out upon the depot platform on his right foot, and fell forward and sidewise about seven feet to the ground. When he stepped off the car, he didn't know for certain that the train was moving, but, after he fell, he looked up and saw it was still in motion, and the rear of the coach next behind the one he stepped off was then opposite him. He procured assistance, and was carried to a house near the depot, where he remained confined, and under treatment of a physician, about five days. Was then hauled home, near Boydsville, where he was confined for a long time, and disabled from practicing his profession for three months. He was a practicing physician, with a practice of a hundred dollars a month. His injury was in his hip. He suffered great pains from the injury, and lost his health, and was greatly reduced in flesh. His bill for board at Knoble, and for transportation home, was $20. Medical treatment there, $7.50.

James Welsh, a witness for the plaintiff, testified that he carried the plaintiff from the north end of the depot, where he was injured, to Gilchrist's house, at Knoble Station.

Waited on him while he was there, and he suffered a great deal. The depot platform there, is all of seven feet above the ground where the plaintiff fell. He assisted Gilchrist in hauling the plaintiff home. He suffered a great deal. Knoble is a small place, in low, muddy country. The platform is about forty or fifty feet long.

James Johnson, for the plaintiff, testified that the plaintiff lived at his house. When brought home he was suffering very much; could not walk for three weeks, and then only on crutches for about two months, and after that, for some time, with a stick. He was a physician, and got good average practice. Had frequent calls, during the injury, which he could not attend.

There was other testimony of the extent of the injury.

The conductor of the train testified, for the defendant, that when the whistle sounded for Knoble Station he went into the coach where the plaintiff was, tapped him upon the shoulder, and told him that was his station, and then went on to the platform of the next car to wait for the train to stop, and was looking out for plaintiff, when he saw him jump from the car, while it was moving, and strike the north end of the platform and fall to the ground. The train passed on about fifteen or twenty feet, after the plaintiff jumped off, before it stopped. It was moving very slowly when the plaintiff jumped off. Any man of common activity might have jumped off with safety at the speed it was moving. The platform there is about eighty-five feet long.

For the plaintiff, the court gave to the jury the following instructions:

1. "If the jury find from the evidence that the plaintiff was a passenger on defendant's train for Knoble Station, and, on arriving there, the conductor or agent called out the name of the station, and directed the plaintiff to get off

said train, without first stopping it, and that the platform at that station is unsafe, and of insufficient length for the safe landing of passengers, and that the plaintiff got off the train under the directions of the defendant's conductor, agent or employee, and, in doing so, was injured, on account of not stopping said train in time, or on account of such unsafe or insufficient platform, the defendant is liable.

2.   " If the jury find from the evidence that the plaintiff was ordered, or directed, by the conductor or agent of the defendant to get off the train, he had a right to rely upon such advice, or directions ; provided, he took no more risk in getting off the train than a prudent man would have taken under the same circumstances.

3.   " If the jury find that the plaintiff took no more risk than a prudent man would, under the same circumstances, he was not guilty of contributory negligence.

4.   " If the jury find that the plaintiff was ordered, or directed, by the defendant's conductor or employees, to get off the train, and told to hurry up, and such orders and directions would cause a man of ordinary reason to believe that he must leave the train, or submit to the inconvenience of being carried past his station, and that the plaintiff, in getting off the train, was injured, the defendant is liable ; provided that they find that the act of getting off the train was a careful and prudent act, and not a rash and careless exposure to peril and hazard."

5.   " If the jury find for the plaintiff, they will assess his damages at a sum that will compensate him for the bodily injury sustained, the pain suffered, the effect of the injury on his health, according to its degree and probable duration, the expense of his sickness resulting from the injury, and of attempting to effect a cure, and the pecuniary loss sustained by reason of inability to attend to his business or profession."

6. "The defendant is bound to provide safe and sufficient platforms for the landing of passengers, of sufficient length to afford safe egress to passengers from an ordinary train."

For the defendant, the court instructed the jury that:

1. " If they find that the plaintiff could, by ordinary care and prudence, have prevented the injury, they will find for the defendant, and refused the

2. " If the jury find that the plaintiff's own careless and negligent conduct caused or contributed to cause the injury, they will find for the defendant."

And the court, of its own motion, instructed as follows:

1. "Both the plaintiff and defendant are held to ordinary prudence."

2. " Before the jury can find for the plaintiff, on the ground that the agent or other employee of the defendant directed or advised the plaintiff to get off the train, they must find from the evidence that such directions or advice were given at a time and in a manner that would have induced the belief in the mind of a man of ordinary reason that such agent meant and intended that he should get off at the time and under the circumstances existing at the time he did get off."

3. " If the jury find that the plaintiff's own careless and negligent conduct caused or contributed to cause the injury, they will find for the defendant."

After the jury had retired for some time, they returned and reported that they could not agree upon the amount of their verdict. The court told them that it was important to the parties that they should agree, and they should not let a hundred or two dollars hang them. They then again retired, and returned with a verdict for the plaintiff, assessing his damages at $800.

The defendant filed a motion for a new trial, assigning as cause, among others, error of the court in its advice to the

jury as to the damages; and also filed the affidavit of one of the jurors, stating that he was induced by that advice to agree to the verdict.    He had before, been in favor of giving the plaintiff only $500.

The motion was overruled, and defendant filed a bill of exceptions and appealed.

*Geo. H. Benton and Dodge & Johnson* for appellant:

Carriers are not *insurers* of the *lives and safety* of passengers, but are bound to take all precautions which wisdom and foresight can suggest to protect and safely deliver them. They are therefore liable for slight negligence, but limited by the duty of passengers *to protect and take care of themselves.* A passenger is bound to exercise ordinary care, and a failure constitutes *contributory negligence*, which bars a recovery. *Sherman & Redfield on Negligence, Secs.* 25 *to* .35 *and Sec.* 265; *Wharton on Negligence, Secs.* 300, 626; *Railway Co.* v. *Hendricks*, 26 *Ind.*, 228. Appellee must show that the injury was a *result* of the negligence, and that he could not have avoided its consequences by the *exercise of ordinary care.    S. & R. on Neg., Sec.* 39.

'' Getting on or off a vehicle, while in motion, is a familiar instance of negligence in the plaintiff, almost always fatal to a recovery for an injury in part, from the negligence of the carriers at the same time.'' *Nelson* v. *R. R. Co.*, 68 *Mo.*, 593; *S & R. on Neg*, *Sec.* 283; *Railway Co.* v. *Whitfield*, 44 *Miss.*, 486; *Railway Co.* v. *Hazzard*, 26 *Ill.*, 384. These cases show that the action of plaintiff, in leaving the train while in motion, is excused only where he acted under a controlling necessity, a ''*vis major*,'' or was deprived of ''*responsible volition*'' by the *wrongful acts of the carrier*; ''and where there was no responsible volition, there was no damnifying negligence.''    *S. & R. on Neg., Secs.* 25, 35, 282,

283; *Wharton on Neg.*, 353–371; 2 *Red. Law Railway*, *Sec.* 177; 16 *Gray*, 502–6–7; 54 *Ill.*, 133; 66 *N. C.*, 499; 106 *Mass.*, 464; 49 *N. Y.*, 47; 23 *Penn.*, 149–150; 32 *Penn.*, 296; 20 *Barb.*, 282; 56 *N. Y.*, 305; 44 *Ill.*, 463; 44 *Miss.*, 466.

If the car, on which appellee was, overshot the platform, he had the *right* to have the train stop long enough to pass through the next car, etc., or to have the train backed, and if he availed himself of neither right, but recklessly jumped off while the train was in motion, he cannot complain. *S. & R. on Neg.*, *Sec.* 277; 28 *Ind.*, 447; 24 *Wis.*, 585; *Siner's Case, 3 Exch. R.*, 150.

Instructions calculated to mislead the jury as to the *weight* to be given to evidence, or that are asked without *any evidence* on which they can be based, should be refused. *Worthington* v. *Curd*, 15 *Ark.*, 492; *State Bk.* v. *Williams*, 6 *Ark.*, 161; and when a verdict is greatly against the weight of evidence, a new trial should be granted. *Jordan* v. *Foster*, 11 *Ark.*, 139.

Plaintiff's first instruction is abstract, and not appropriate. There is no proof that plaintiff got off the train *while in motion*, under directions of defendant. *Armstead* v. *Brooks*, 18 *Ark.*, 521.

The second instruction for defendant was the correct law. Instead of it, the fourth given by the court, inserting the word "materially" after "contributed," was error. *S. & R. on Neg.*, sec. 34. "*Nullus commodum capere potest de injuria sua propria.*"

The instructions given by the court, upon its own motion, erroneous. *Dickinson* v. *Johnson*, 24 *Ark.*, 251, 540.

*W. R. Coody*, for appellee:

1. A reversal cannot be had upon the weight of evidence. 23 *Ark.*, 51, 112.

2.    The instructions were fair and favorable to appellant; the matter fairly submitted, and this court will not reverse. 21 *Ark.*, 357 ; *McNutt* v. *Arnold*, 22 *Ib.*, 477.

3.    This court will not control the discretion of Circuit Courts in management of cases.   10 *Ark.*, 428, and unless an instruction *misstates the law to the prejudice* of a party, this court will not interfere with the verdict.    19 *Ark.*, 534.

4.    The affidavit of I. M. Smith not admissible.   *Gantt's Digest*, sec. 1971.

HARRISON, J.    It was clearly the duty of those in charge of the defendant's train, upon its arrival at Knobel, to stop the same opposite the platform, that the plaintiff might get off.

On the other hand, it may, as a general proposition, be said, that it is imprudent, and a want of proper care, to alight from a train while it is in motion ; but whether it was so in a particular case must depend upon the circumstances under which the attempt was made.   *Crissey* v. *Passenger Railway Co.*, 75 *Penn. St.*, 83.   It would not be so if the train was moving so slowly that no damage could be reasonably apprehended.

But though, in fact, it may be hazardous, a passenger who does so at the instance or direction of the conductor or other employee in the management of the train, on whose opinion or judgment in the matter he has the right to rely, and where the risk or danger was not apparent, cannot be chargeable with negligence.   *Filer* v. *The New York Central R. R Co.*, 49 *N. Y.*, 47 ; *Lambeth* v. *North Car. R. R. Co.*, 66 *N. C.*, 499; *Whart. on Neg.*, sec. 371.

It would seem that the train, when the plaintiff attempted to jump upon the platform, was moving very slowly, as the conductor testified that after he fell, it moved only fifteen

St. Louis, I. M. and S. R. R. Co. v. Cantrell.

or twenty feet before it stopped; and that the direct or immediate cause of the accident was that it had too far passed the platform when he leaped from the car for him to reach it.

There was no evidence that he knew that there was any risk or hazard in the attempt to get off, or of any want of care in him, or of any negligence on his part which contributed to the accident; but it was proved that he was told by the conductor and brakesman "to hurry and get off," the latter telling him also that they were in a hurry, and that he was urged by their impatience to make the attempt.

We can see no objection to any of the instructions the court gave the jury. Those in relation to the question of negligence are in strict accordance with the views above expressed.

That the damages assessed by the jury were excessive, was not assigned as a ground of the motion for a new trial, and the appellant cannot be heard to complain of the fifth, or that in regard to the measure of the damages. It was, however, clearly correct. *Peoria Bridge Association* v. *Loomis*, 20 *Ill.*, 235; *Ransom* v. *New York and Erie R. R. Co.*, 15 *N. Y.*, 415; *Sedgw. on Damages*, 699, *note* (2).

The court having already instructed the jury to the same effect as asked by the defendant in his second instruction, it was, for that reason, very properly refused.

As the damages are not complained of as excessive, we have no occasion to consider the defendant's objection to the remark of the court to the jury that it was important to the parties that they should return a verdict, and they should not let one or two hundred dollars prevent them; and we will merely say, we think it was not calculated to influence the jury to the defendant's prejudice.

The affidavit of the juror should not, however, have been

allowed to be filed, as the Statute expressly declares that:—
"A juror cannot be examined to establish a ground for a
new trial, except it be to establish, as a ground for a new
trial, that the verdict was made by lot." *Sec.* 1971 *Gantt's*
*Digest.*

The judgment is affirmed.