W. T. OWENS v. ATLANTIC COAST LINE RAILROAD COMPANY
(OF SOUTH CAROLINA).

(Filed 15 April, 1908).

**Railroads—Pleadings—Demurrer—Rights of Passenger—Contributory Negligence—Contract, Breach of—Nominal Damages.**

The complaint alleges that the plaintiff was a passenger on defendant's passenger train scheduled to stop at his destination, and tendered the conductor the money or fare thereto, and was informed by the conductor that the train would not stop there on that trip—that it was impossible to do so. At plaintiff's urgent solicitation the conductor repeatedly refused to stop the train for the reason given. The plaintiff, in the presence of the conductor, got upon the steps of the car and informed the conductor that he was bound to stop. The train slackened its speed and the conductor "threw up his hand," which plaintiff understood was given for him to jump and he did jump, but after he felt the train gathering speed, and was injured, the signal being to the engineer to go ahead: *Held*, (1) that under such allegations the plaintiff was guilty of contributory negligence that would bar recovery for actual damages; (2) that for the breach of defendant's duty to stop the train according to its schedule it was answerable in nominal damages; (3) that a demurrer to the complaint should not have been sustained.

ACTION tried before *Webb, J.,* at December Term, 1907, of ANSON.

The defendant demurred to the complaint *ore tenus* and moved to dismiss it because it fails to state a cause of action. The court sustained the demurrer and dismissed the action, from which judgment the plaintiff appealed.

The facts are stated in the opinion.

*Robinson & Caudle* for plaintiff.
*McLean & McLean* and *J. H. Pou* for defendant.

BROWN, J. The plaintiff alleges in the complaint that on 19 October, 1900, he was a passenger on defendant's train *en route* from Cheraw to McFarlan, a station on defendant's road, at which said train was scheduled to stop; that he tendered his fare to the conductor, who refused to receive it and

informed plaintiff that he could not stop at McFarlan in consequence of certain orders received, but that he would carry plaintiff to Wadesboro and bring him back to McFarlan without extra charge, and that the conductor did not accept at any time the fare tendered; that plaintiff again told the conductor that he was compelled to stop at McFarlan to attend the funeral of his child, and the conductor again informed him he could not stop. The complaint further alleges: "About this time said train was approaching McFarlan station, and the plaintiff approached the door of the car, passing by the conductor, and took his position upon the steps of the same, in full view of said conductor, the latter taking a position in the side door of said car, a few feet from the plaintiff. Plaintiff from this position again informed said conductor that he was 'bound' to stop. As said train approached McFarlan station it relaxed its speed and the plaintiff was thereby induced to believe that said train was going to stop, as it was required to do, for his safe delivery; that plaintiff and the conductor continued in full view of each other and were looking at each other at the time said train reached said passenger station, at which time said conductor threw up his hand or gave a signal, and plaintiff, feeling the speed of the train increase and believing that said conductor meant and intended that he should then jump, and believing that he could do so with safety, and knowing that if he failed to do so he would miss the burial of his child, thereupon endeavored to jump from said train and was violently hurled to the ground, inflicting painful and serious wounds upon his shoulder and other parts of his body; that before the plaintiff jumped from said car it became evident to him that said conductor was not going to stop said train and in truth did not stop the same, and said conductor knew that the plaintiff intended to alight from said train, and his conduct and attitude was such as to induce the plaintiff to believe that he could do so with safety."

We are of the opinion that his Honor erred in sustaining the demurrer and dismissing the action, for while, according to the allegations of the complaint, the plaintiff, under our decisions, is clearly not entitled to recover any damages for the physical injuries received by him from jumping off the running train, yet a cause of action is stated which unanswered would entitle him to recover nominal damage (which would carry the cost), although there is no specific allegation of substantial or actual damage in the complaint except such as resulted directly from plaintiff's own negligent act.   *Hocutt v. Telegraph Co., ante,* 186.

1. There is no allegation in the complaint that at the time plaintiff jumped off the train it had slackened its speed "until it came nearly, almost to a full stop," or that it was moving very slowly, "a slight, gentle, creeping movement," etc., as in the *Nance case* cited by plaintiff, 94 N. C., 622.   On the contrary, the plaintiff avers that, although as the train approached McFarlan it relaxed its speed, yet before the plaintiff jumped he felt the speed of the train increasing and he jumped then because he knew it would not stop.

Every court in this country recognizes the just and reasonable rule that those who are injured while attempting to get on or off a moving train cannot recover for injuries sustained in consequence.   In *Johnson v. Railroad,* 130 N. C., 488, in the opinion of the Court by the present Chief Justice, it is said: "It is the duty of the passenger who sees the train in motion to ask for it to be stopped, and if it is not done he ought not to get off."

The precedents in this State are uniform and numerous and are collected in the opinion of *Mr. Justice Walker* in *Morrow v. Railway Co.,* 134 N. C., 92, which case is cited and approved in *Whitfield v. Railroad, ante,* 236.   Nor has the plaintiff stated facts which bring him within any recognized exception to the rule, as in *Johnson's case* or *Nance's case, supra.*

The allegation "that before the plaintiff jumped from said car it became evident to him that said conductor was not going to stop said train" is inconsistent with the idea that plaintiff was misled. The plaintiff alleges that he had been twice informed by the conductor that under his orders he could not stop at McFarlan. Although at the time plaintiff alighted from the train he avers he was standing within a few feet of the conductor, he did not deem it necessary to inquire of the conductor if he had changed his purpose, but evidently preferred to take the chance of serious injury rather than be carried by. Upon his own allegations the plaintiff was not invited by the conductor to alight or given any assurance or suggestion that it would be safe for him to do so.

The conductor was standing in the side door of the car, evidently signaling for the engineer not to stop, as is shown by the immediate increase of speed felt by plaintiff before he jumped. The plaintiff could not reasonably interpret that as a signal to him to jump, for he realized immediately and before he jumped that the speed was increasing and not decreasing. He should have remained on the car and not have risked life and limb by leaping from it.

2. Nevertheless, the plaintiff has stated a cause of action, and although the complaint as drawn fails to set out any substantial damage (except such as ensued from the plaintiff's own unwarranted act in jumping off, and for which he cannot recover), yet he may recover nominal damages.

The plaintiff avers that the train he boarded as a passenger "was scheduled to receive and deliver passengers at its station in the village of McFarlan," and that he tendered the full fare to that place, which the conductor refused to receive because he had orders not to stop there. A carrier of passengers who advertises the schedules of its trains to stop at certain stations for the purpose of receiving and discharging passengers is required by law to stop at such stations. It is a part of the contract with the passenger when he enters the

train.   2 Hutchinson on Carriers, sec. 1110 ; *Thomas v. Railroad,* 122 N. C., 1006.   Some overruling necessity might excuse the carrier for passing by a regular station, but the burden would be on the carrier to show it.

In a case somewhat similar, when the carrier failed to stop at a regular station, the Supreme Court of Louisiana says: "It would be an unreasonable construction of the contract of carrying passengers that the defendant company should know the objects and purposes of each passenger boarding the train, and an implied contract should spring from such imputed knowledge.   The contract was to carry the plaintiff safely to Burke station and then put her off with safety to her person and effects.   The defendant company violated the contract, etc.   The plaintiff has failed to show definitely the amount of pecuniary loss sustained.   There was, however, a violation of the contract."   The Court then goes on to hold that the plaintiff may recover at least nominal damage.

So, in our case, although the complaint fails to specify any actual damage sustained, except those personal injuries the plaintiff brought on himself, yet the plaintiff may recover nominal damage for the breach of the contract in defendant's failing to stop the train at a regular station advertised on its published schedules.   Fetter on Carriers, sec. 536.

Reversed.