Action to recover damages for personal injuries alleged to have been caused by defendant's negligence, in that plaintiff alighted from a moving train under direction from the porter, and when it was not apparently dangerous to alight. The jury found, upon the issues submitted to them, that defendant was negligent and plaintiff was guilty of contributory negligence.
The court charged the jury, on the first issue, that if plaintiff went upon the train, with the knowledge of the conductor, to assist Mr. W. J. Clark in helping his blind wife to get into the coach, and in procuring a seat for her, and he was not allowed reasonable time to do so before the train started again, they should answer the first issue "Yes"; but that plaintiff had no right to stay on the train longer than was reasonably necessary for that purpose, and if he did so, the fault was his, and not the defendant's. He then stated that one witness, a railroad employee, had testified that the train stopped four minutes at Littleton, where plaintiff was hurt, but directed the jury afterwards to be guided by their own recollection of the testimony, and not by his, if he had stated it incorrectly.
Plaintiff testified that, at Mr. Clark's request, he assisted Mrs. Clark, who was blind, and the train started before he could get her a seat. When they had gone as far as the middle of the car, he saw that the train was moving. He left Mrs. Carter standing in the aisle with her husband, and started back to the platform. The aisle and platform were crowded, and the porter said to him "You can get right off here" (designating the place with his hand), and he then alighted and thought it was safe, as the train was moving slowly — just moving along. After he stepped off, he struck a pile of rock at the end of a culvert and stumbled over it and fell 5 or 6 feet into a ditch, and was bruised and scarred, and his clothes were torn.
(246) One of plaintiff's witnesses, J. H. Harvey, testified that as he started to jump, he looked back towards the train and towards him, with his right foot forward, and when he jumped he struck the ground about 5 feet this side of the culvert and fell over it "about as far as from here to the table" — about 6 or 8 feet — the top of the culvert being 4 feet higher than the place where he fell. It had been there a long time.
The witnesses differed as to its distance from the station, one saying 100 feet and another as much as 280 or 290 feet.
The conductor and porter testified in contradiction of plaintiff, both saying they were in another part of the train and did not see him, and did not know he was on board, and the porter that he did not show him the place from which he could alight; that he was at the rear end of the train. *Page 233 
There was evidence corroborating plaintiff as to the porter seeing him when he alighted from the train, and also evidence that he was "full of liquor" on Sunday before the Easter Monday (8 April, 1912) when he was hurt. He got three packages of liquor from the express office on Saturday before, but those who assisted him after he fell stated that there was no indication, at that time, that he had been drinking.
There also was evidence that plaintiff had stated that it was his own fault, and he did not blame the company; that he did not notify the conducter, and there was no employee there when he jumped.
One witness for defendant, L. F. Shearin, plaintiff's business partner, testified: "While I was carrying Mr. Carter home I asked him how he got hurt, and he said Mr. Clark asked him to help get his wife on the train, and when he got on the train he started back out of the car; that there was a crowd in the aisle and delayed him when he got to the door; that the train started off and he did not think it was running fast enough to hinder him from getting off, and it threw him. He did not say anything about seeing the conductor there, or the porter. He said if he had been attending to his business, he would not have gotten hurt; that he had no business on the train." Others of defendant's witnesses testified that he did not mention the conductor or the porter in (247) speaking to them about the accident.
The jury, under the evidence and instructions of the court, answered the first issue, as to negligence, "Yes."
Upon the second issue plaintiff requested the following instruction: "If the jury find from the evidence that the plaintiff, not being a trespasser upon the defendant's train, and while in the act of alighting from the same, was induced by the words or the acts of the porter to get off the said train while the same was in motion, and that the train was going slow, and was so slow that the danger of stepping or jumping off was not apparent to a reasonable man, and he did so and was injured, it would not be contributory negligence, and you will answer the second issue No."
This instruction was not given, except as it is covered by the charge upon the second issue, which was as follows:
"1. Did the plaintiff by his own negligence contribute to his injury? The plaintiff admits that he jumped off the train while it was moving. I think he said, or one witness said, he fell as far as from the chair to the table; if he moved out and off the train while it was moving, then he was guilty of contributory negligence, and you should answer the second issue `Yes,' unless you are satisfied that the porter caused him to jump off. (He did not say that the porter caused him to jump off; he said that he started off at the end where he got on, and found that the aisle *Page 234 
was full, and that he turned and went to the other end of the coach and found some people on the steps and found difficulty in getting down there, and some one with a uniform on like a railroad porter said, `Here is a place you can get off'; he then turned and got off on the other side.)
"2. If he was induced to get off there by the porter, that the porter caused him to do it, you will answer that issue `No,' unless you are satisfied from all the evidence that the train was running at a speed so great as to show plainly to everybody, a reasonable man, that it would be dangerous to jump off at that place. (If the train was going at the rate of 15 or even 10 miles an hour, it was his duty not to notice anything the porter said to him at all, because it would be evident (248) that it would be dangerous to get off. One of the witnesses said it was slow — so slow that he thought he could get off. Some of the witnesses said it was running 15 miles an hour. Whenever you come to consider the speed that it was running, you may take into consideration what the plaintiff said, what that witness said, and what the plaintiff said about his falling about as far as from the chair to the table. You may take that evidence into consideration when you come to consider how fast the train was moving.)
"3. If I get the evidence wrong, you must be guided by your recollection and not by mine; after all, you are the sole judges of what they say. And now, if the porter did tell him to get off, and he was negligent in getting off, you will answer the second issue `Yes.' (When any man gets off a moving train, it is his business to look ahead and see where he is going to land, to see whether there is any obstacle there to increase the danger of getting off; and if he could, by the exercise of ordinary care, have seen the culvert was there and it was dangerous to jump off near it, he was guilty of contributory negligence in getting off at thatparticular point.)"
Plaintiff excepted to the part of the charge in parentheses. The jury answered the second issue, as to contributory negligence, in the affirmative. Judgment was entered for the defendant, and plaintiff, thereupon, appealed.
After stating the case: If the judge expressed any opinion as to how long the plaintiff remained on the train, it was in the part of his charge upon the first issue, and as the jury answered that issue in favor of the plaintiff, the error, if any, was thereby cured and became harmless. This is a well settled principle, and is undoubtedly a correct *Page 235 
one. Vickers v. Leigh, 104 N.C. 248; Graves v. Trueblood, 96 N.C. 495;Thornburg v. Mastin, 93 N.C. 258; Clark's Code (3 Ed.), p. 771, note to section 550, and cases; 3 Womack's Digest, pp. 18 and 19, where the numerous cases are referred to. Where the jury (249) corrects an error, if one has been committed by the trial court, it is disregarded, because unprejudicial and eliminated by the verdict. Error alone is not sufficient to reverse, but there must be some harm to the party who excepts, by reason thereof; not that he must affirmatively show injury, but if it appears that there is none, his exception fails. 3 Cyc. (title, Appeal and Error), p. 383 et seq. There was evidence by two witnesses, and taken from the record, that the train stopped four minutes, but whether plaintiff had fully this time to perform his act of gentle courtesy and leave the train before it resumed its journey, related to the first issue, as we have shown, and plaintiff won on that part of the case. He has not, therefore, been hurt.
The real question is, Was he guilty of negligence himself when leaving the train? This is to be determined by his conduct at the time. If the train was running at the rate of 10 or 15 miles the hour, and increasing its speed, he was clearly negligent in jumping from it. Such an act was, on its face, a reckless one. But the court, as we think, correctly instructed the jury according to the accepted doctrine of the courts, and of this Court especially, which may be thus stated: Although the passenger, by the refusal of the railway company to stop its train, may be carried beyond his destination unless he alights while the train is in motion, he will not be justified in attempting to alight, notwithstanding an invitation to do so by an employee acting in the line of his duty, if the speed of the train is so great that the danger of alighting is apparent, or if circumstances exist making the attempt obviously perilous. In such cases, prudence would require him to submit to the wrong and to seek his redress for it in an action against the carrier, if he should be blamable. A passenger would only be justified in such attempt to avoid the inconvenience by leaving the vehicle while in motion when the circumstances were such as to induce a person of ordinary prudence and caution to believe that no danger was to be apprehended from such a course. 3 Hutchison on Carriers, sec. 1180 and notes. This accords with our own decisions.
In Johnson v. R. R., 130 N.C. 488 (opinion by the present (250)Chief Justice), this Court approved a charge not, in substance, unlike that of Judge Peebles in this case. It was held that if the carrier's employee, acting within the line of his duty, either by his words or conduct induces another, who is lawfully on the train, to alight therefrom, the latter is justified in doing so, provided it would not appear to *Page 236 
a man of ordinary prudence dangerous to make the attempt at the time, and provided further, he otherwise exercised due care in alighting. Said the Court: "If upon such an invitation the plaintiff did alight, the speed of the train not being such as to put him on guard" not to act on the assurance thus given by the employee, the contributory negligence of plaintiff was not so manifest as to become a matter of law, but was for the jury upon the facts, as they found them to be. This is the clear substance of the opinion, with some of the language of the Court.
This was the view taken by Judge Peebles in the case at bar, and he therefore left it to the jury to say, by their verdict, whether the invitation to alight, express or implied, was given by the porter, and if it was, whether alighting, at the time and under the circumstances, would have appeared to a man of ordinary prudence obviously dangerous, and if they found the danger was so apparent that an ordinarily prudent man would not have taken the risk, plaintiff was guilty of contributory negligence in doing so. So he submitted the question in two branches: first, was the invitation given, and, second, was the plaintiff negligent, notwithstanding the invitation, in taking an obviously dangerous chance of being injured? The jury found, either that no invitation was given, or, if it was, that the plaintiff had himself been negligent, as the danger was obvious.
The Court held, in Browne v. R. R., 108 N.C. 34 (cited in Johnson'scase, supra), that the act of getting on or off a moving train is evidence of contributory negligence, and imposes on one who is injured in doing so the burden of proving that the peculiar circumstances of the case justified him in such course. A common carrier of passengers is under no obligation to delay the departure of its trains, or to look after (251) the safety of persons who attempt to enter them, when they have been stopped long enough to allow passengers to embark and disembark; but it may be liable for injuries suffered by one who, by the invitation or command of persons in charge of the trains, attempts to get on or off while the cars are in motion, provided he does not expose himself to manifest danger.
Burgin v. R. R., 115 N.C. 673 (opinion by Shepherd, J.,) was a case where plaintiff alleged merely that the conductor promised to stop for him to get off at Round Knob, but failed to do so, and that being, at the time, on his way home and anxious to see his child, who was sick and in a dying condition, he jumped from the train as it was passing the station, and was injured; held, on demurrer, that the complaint was bad, the Court saying: "We think there can be no question as to the correctness of the ruling sustaining the demurrer. The general rule is that passengers who are injured while attempting to get on or off a moving train *Page 237 
cannot recover for the injury. Browne v. R. R., 108 N.C. 34; Hutchison Carriers, sec. 641. In Lambeth v. R. R., 66 N.C. 494, it was said: `If the intestate, without any direction from the conductor, voluntarily incurred danger by jumping off the train while in motion, the plaintiff is not entitled to recover.' In addition to these authorities, there are a number to be found in other jurisdictions which abundantly sustain the proposition that it is contributory negligence to `attempt to alight from a moving vehicle, although, in consequence of the refusal of the carrier to stop, the passenger will be taken beyond his destination, unless he is invited to alight by some employee of the carrier whose duty it is to see to the safe egress of the passengers from the conveyance. The mere fact that the train fails to stop, as was its duty, or as the conductor promised to do, does not justify a passenger in leaping off, unless invited to do so by the carrier's agent, and the attempt was not obviously dangerous,'" citing Walker v. R. R., 41 La. Ann., 795; Jewell v. R. R., 54 Wis. 610; R.R. v. Morris, 31 Grattan (Va.), 200; Nelson v. R. R., 68 Mo., 593; 2 Wood on Railways, 1133, and adding that there are many other cases to the same effect.
There was some evidence in Lambeth v. R. R. (66 N.C. 495), (252) which, though, was disputed, that plaintiff alighted from a moving train by the invitation or command of the conductor, and the Court said with respect to this phase of the case: "If the intestate, without any direction from the conductor, voluntarily incurred danger by jumping off the train while in motion, the plaintiff is not entitled to recover. If the motion of the train was so slow that the danger of jumping off would not be apparent to a reasonable person, and the intestate acted under the instructions of the manager of the train, then the resulting injury was not caused by contributory negligence or a want of ordinary care," citing Sh. and Redf. on Negligence, chs. 15 and 27. These authorities have all been since approved by this Court as stating the true principle applicable to such cases. Morrow v. R. R., 134 N.C. 92; Denny v. R. R., 132 N.C. 340;Hinshaw v. R. R., 118 N.C. 1047; Hodges v. R. R., 120 N.C. 556; Watkinsv. R. R., 116 N.C. 962.
We said in Morrow v. R. R., supra, that "All of our cases are based upon what was held by this Court in Lambeth v. R. R., 66 N.C. 494 (8 Am.Rep., 508), which has been conceded, for many years, to be the leading and controlling authority with us upon the question." And in Watkins v.R. R., supra, Justice Clark said: "The case of Burgin v. R. R., (115 N.C. 673) holds that the passenger is not justified in leaping from the train while in motion, unless invited to do so by the carrier's agent, and when it is not obviously dangerous," and approves Lambeth's case. *Page 238 
The reason for this being an exception to the general rule, that it is negligence for a person to alight from a moving train, is that the invitation of the conductor, porter, or other employee of the carrier, acting in the course of his duty, to alight, is equivalent to an assurance that it can safely be done at the time and place, and the person may reasonably act upon this implied assurance, in the absence of any facts or circumstances which obviously show that it is dangerous, so that a man of ordinary prudence would not take the chance of injury thus facing him. It is not only a firmly settled rule, but is also an eminently just (253) and reasonable one, and it has been adopted in a case of great weight (R. R. v. Egeland, 163 U.S. 93). The court, therefore, properly left the question to the jury, whether the invitation was given, and if so, whether the danger was so obvious that a man of ordinary prudence would not have acted upon the invitation and incurred the risk.
The judge did not give the instruction in the language used by counsel in framing it, nor was he required to do so. No rule of practice is better settled than that a judge is not bound to give instructions in the identical words of a request, if the matter or principle embraced therein is correct and amply presented. Annuity Co. v. Forrest, 152 N.C. 621. It is sufficient to comply with the request in substance, with this cautionary limitation, that while the judge is not confined to the exact language of a prayer for instructions, as selected by counsel, and keeps within the law if he gives it substantially and so that the jury may fully understand its meaning, he cannot so alter the phraseology as thereby to weaken its force.Graves v. Jackson 150 N.C. 383; Rencher v. Wynne, 86 N.C. 268. It may often be proper to change the language so as to enlarge or restrict the scope of the instruction, or to apply correct legal propositions, abstractly stated, to the concrete case presented by the evidence. We think the judge fully complied with this rule, although he departed from the very words of the instruction, as he had the right to do. He explained to the jury the principle of law as applicable to the different phases of the evidence, and did it with perfect accuracy. He told the jury that if the porter gave the invitation, and plaintiff was induced or caused thereby to get off at the place where the culvert was, they would answer the second issue "No," unless they were satisfied, from all the evidence, that the train was moving at a speed so great as to show plainly to everybody — a reasonable man — that it would be dangerous to jump off at that time and place. How could he have expressed it any better or more strongly for the plaintiff? What he added to this instruction surely did not vitiate it. If the train was running at the rate of 10 or 15 miles an hour, it was reckless to jump from it. There could be no two reasonable opinions as to his negligence in such a *Page 239 
case. Burgin v. R. R., supra; Morrow v. R. R., supra; Whitfield (254)v. R. R., 147 N.C. 236, and the other cases already mentioned. His danger from jumping was not only obvious, but may well be said to have been imminent and inevitable. His escape from it would have been almost miraculous and, at least, providential. There could be no justification for taking any such risk, and the injury would be imputable to his own folly, and he would have himself to blame as the real author of his misfortune.
The jury found that he did not receive the invitation from the porter, or that he acted negligently, when he could see the danger for himself and correctly gauge the risk, and this being so, the answer to the second issue was right.
The other exceptions become unimportant, in view of what we have said. They relate to the first issue, or were taken to harmless rulings.
It is immaterial as to which side of the platform he jumped from; whether he was invited to do so by the porter and it was not dangerous, or he was not thus invited, or it was obviously dangerous. In the first view he was not, and in the last he was, guilty of contributory negligence. His own conduct was under review, without regard to the particular part of the steps or platform he used as the locus a quo, and he was given the full benefit of this phase of the case.
We have treated the question as if plaintiff was rightfully on the train, with substantially the privileges of a passenger, under Morrow v.R. R., supra, and Whitley v. R. R., 122 N.C. 987; and not as a trespasser, or a mere licensee. But he is subject, also, to the rule applicable to passengers, as laid down in Johnson v. R. R., supra, and other cases of like tenor, which we have cited, and which have been approved recently by us in Owens v. R. R., 147 N.C. 357, where the Court, quoting from Johnson v. R. R., says: "It is the duty of the passenger, who sees the train in motion, to ask for it to be stopped; and if it is not done, he ought not to get off"; and also in Reeves v. R. R.,151 N.C. 318, where it is said: "We admit the general rule, as well established, that persons injured while attempting to get on or off a moving train cannot recover for any injuries they may (255) sustain," excepting, however, train hands, brakemen, and the like, under certain circumstances.
Our first impression of the case was that the judge had not recited the evidence correctly to the jury, but had told them that the plaintiff was directed by the porter to get off at one side of the platform, when he disobeyed, crossed over to the other side, and jumped from the steps. A careful examination of the record convinces us that we misapprehended what the judge did say, as to this feature of the case, and find that he *Page 240 
substantially and fairly followed the course of the evidence throughout, and also cautioned the jury to rely on their own recollection of it.
We do not see the impropriety of the judge stating that the manner in which the plaintiff struck, or fell on, the ground might be considered by them upon the question as to the speed of the train. It was a circumstance tending to prove the fact, and, besides, was somewhat in conflict with plaintiff's statement that the train was moving very slowly.
A critical review of the record has not disclosed any error committed on the trial of the case. The jury having found that the plaintiff's negligence contributed to his injury, judgment was properly entered for the defendant. McAdoo v. R. R., 105 N.C. 140; Baker v. R. R., 118 N.C. 1015;Harvell v. Lumber Co., 154 N.C. 262; Hamilton v. Lumber Co., 160 N.C. 51;Sasser v. Lumber Co., ante, 242.
The exceptions as to damages are now immaterial.
No error.
Cited: Holton v. Moore, 165 N.C. 551 (3f); Guano Co. v. MercantileCo., 168 N.C. 226 (4g); S. v. Kincaid, 183 N.C. 718 (4f); S. v. Beam,184 N.C. 742 (1f); Leavister v. Piano Co., 185 N.C. 155 (4f); S. v. Miller,185 N.C. 683 (1g); McKoy v. Craven, 198 N.C. 781 (3f); Stamey v. R. R.,208 N.C. 669 (5f); Caldwell v. R. R., 218 N.C. 72 (4f); Carter v. Bailey,221 N.C. 278 (5g).