RUBY MELVIN LOVE v. QUEEN CITY LINES, INCORPORATED, AND QUEEN CITY COACH COMPANY.

(Filed 23 May, 1934.)

1. **Master and Servant D a—In this action by third person against master, evidence of relationship of master and servant held insufficient.**

   Plaintiff instituted this action against two bus companies having State franchises, N. C. Code, 2613(1), 2621(29) (a), to recover for injuries sustained by her while riding as a passenger in a public bus. Plaintiff's evidence was to the effect that at the time of the injury she was riding on a bus operated by one of the companies over a route covered solely by its franchise, and the only evidence connecting the other company with the operation of the bus was the fact that plaintiff was riding on a transfer issued by it. The second company moved for judgment as of nonsuit on the ground that there was no sufficient evidence of its ownership or operation of the bus, and introduced testimony that transfers of the first company were exhausted and that transfers of movant were used only until transfers of the first company should be available, and renewed its motion of nonsuit: *Held*, the evidence was insufficient to be submitted to the jury on the issue of the second company's liability, and its motion of nonsuit should have been allowed.

2. **Bus Companies A c—Evidence of negligence of bus company, proximately causing injury to plaintiff, held sufficient for jury.**

   Evidence that defendant's bus was late on its fixed schedule and was traveling at an excessive rate of speed in order to make up time, N. C. Code, 2621(45) (a), 2621(46), with evidence permitting an inference that its brakes were defective and that otherwise it could have been stopped before it left the road, *is held* sufficient to be submitted to the jury on the issue of negligence in an action by a passenger to recover for injuries sustained by her when the bus left the hard surface, ran two hundred yards before it ran off the road and was wrecked.

**3. Same—Degree of care required of bus companies as common carriers.**

While bus companies are not insurers of the safety of their passengers, as common carriers they are held to high degree of care for their safety, and the court's instruction in this case is held without reversible error upon exception and appeal by defendant bus company.

**4. New Trial B g—In this case the record disclosed that movant failed to exercise due diligence to obtain the evidence in time for trial.**

The trial court's refusal of defendant's motion for a new trial for newly discovered evidence *is held* within its sound discretion under the facts of this case, it appearing that defendant had not exercised due diligence to obtain the evidence relied upon on the motion in time to present same at the trial. The grounds for a new trial for newly discovered evidence are discussed by *Mr. Justice Clarkson.*

**5. Supersedeas A d—**

The trial court's order that appellant file supersedeas bond with another surety upon its finding that the surety upon the first bond was not sufficient *is held* without error. N. C. Code, 650.

APPEAL by defendants from *Hill, J.,* and a jury, at October Special Term, 1933, of MECKLENBURG. Affirmed as to Queen City Coach Company. Reversed as to Queen City Lines, Incorporated.

This is an action for actionable negligence, brought by plaintiff against defendants, alleging damage. The issues submitted to the jury and their answers thereto were as follows:

"1. Was plaintiff injured by the negligence of defendant, Queen City Coach Company, as alleged in the complaint? Answer: Yes.

2. Was plaintiff injured by the negligence of the defendant, Queen City Lines, Incorporated, as alleged in the complaint? Answer: Yes.

3. What damage, if any, is plaintiff entitled to recover? Answer: $7,000."

The exceptions and assignments of error and necessary facts will be set forth in the opinion.

*Hiram P. Whitacre, John M. Robinson and Hunter M. Jones for plaintiff.*

*J. Laurence Jones and J. L. DeLaney for defendants.*

CLARKSON, J. At the close of plaintiff's evidence and at the close of all the evidence, the defendants made motions for judgment as in case of nonsuit. C. S., 567. We think the court below correct in refusing the motion as to the defendant, Queen City Coach Company, but not so as to Queen City Lines, Incorporated. The learned judge in the court below submitted to the jury, second issue, "Was plaintiff injured by the negligence of the defendant, Queen City Lines, Incorporated, as alleged in the complaint?" This issue was premised that there was

sufficient, competent evidence to be submitted to the jury that at the time of the injury to plaintiff, the Queen City Lines, Incorporated, was jointly interested with the Queen City Coach Company, in the ownership and operation of the bus in which plaintiff was riding, when the bus ran off the road, which caused the injury to plaintiff. From the evidence, we do not think there was more than a scintilla of evidence and not sufficient to be submitted to the jury as to the liability of the Queen City Lines, Incorporated. The Queen City Lines, Incorporated, and the Queen City Coach Company were two separate corporations, operating under the provisions of the North Carolina Motor Vehicle Act, regulating the operation of motor vehicles for transportation of passengers for hire on the highways of the State. The plaintiff was injured near Wadesboro on a bus operated by the Queen City Coach Company, over a route between Charlotte and Wilmington, under franchise granted by the State to the Queen City Coach Company. The Queen City Lines, Incorporated, had no such franchise over this route, but over other routes in the State. The plaintiff did not get on the bus at the station in Charlotte, but it stopped for her at Hawthorne Lane and Seventh Street. She was enroute to St. Pauls to attend the funeral of her brother-in-law and to reach there, had to go to Lumberton over the line of the Queen City Coach Company. The only circumstance worth considering, in the evidence to raise a suspicion, that the corporations were jointly interested, was the pink ticket marked, "Queen City Lines, Incorporated, No. 2856," given her by the operator of the bus, when she got on the bus and paid for a round-trip ticket. This suspicious circumstance and how the bus operator happened to have the "pink ticket" was fully explained by all the witnesses. The operator of the bus testified: "The Queen City Coach Company had run out of transfers at that time and I was using Queen City Lines transfers until the Coach Company got theirs in. The forms are the same. The only thing to distinguish the difference would be the name of the company."

Without going further into this aspect, we may say that from a careful reading of the record, we do not think there is any sufficient, direct or circumstantial evidence at the time of the injury complained of by plaintiff, to connect the Queen City Lines, Incorporated, with the operation of the Queen City Coach Company route, which alone had a franchise to operate under, from Charlotte to Wilmington, North Carolina.

N. C. Code of 1931 (Michie) (1933 Supplement), 2613(1): "Every corporation or person, their lessees, trustees, or receivers, before operating any motor vehicle upon the public highways of the State for the transportation of persons or property for compensation, within the purview of this act, shall apply to the commission and obtain a franchise

certificate authorizing such operation, and such franchise certificate shall be secured in the manner following," etc.

N. C. Code of 1931 (Michie) (1933 Supplement), 2621(29) (a): "There shall be paid to the Department of Revenue annually, as of the first day of January, for the registration and licensing of passenger vehicles, fees according to the following classifications and schedules: (1) Franchise Bus Carriers.—Passenger motor vehicles operating under a franchise certificate issued by the Corporation Commission under chapter fifty of the Public Laws of one thousand nine hundred and twenty-five, and amendments thereto, for operation on the public highways of this State between fixed *termini* or over a regular route for the transportation of persons or property for compensation, shall be classified as 'franchise bus carriers.'"

The facts in this action differ from those in *Myers v. Kirk,* 192 N. C., 700. We think the court below should have sustained the motions for judgment as in case of nonsuit against the Queen City Lines, Incorporated, and rightly overruled same as to the Queen City Coach Company. The evidence on the part of the plaintiff was to the effect that the bus she was riding in had a fixed schedule and it left Charlotte the morning of 6 February, 1933, behind time, between 15 and 20 minutes late and at the time of the wreck, was going fifty miles an hour. It could be inferred from the evidence that the brakes were defective and if they had not been, the bus driver could have stopped the bus after leaving the hard surface, in a short distance, but it went the space of two hundred yards before it ran off the road and was wrecked. There was other evidence indicating negligence. N. C. Code, 1931 (Michie), section 2621(45) (a), is as follows: "Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving and upon conviction, shall be punished as provided in section 2621(102)."

Section 2621(46), is as follows: "Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such a speed as to endanger the life, limb or property of any person and in no event at a rate of speed greater than forty-five miles per hour," etc.

The court below charged fully and correctly, as to negligence, proximate cause and damage, gave the contentions of the parties with care and the law applicable to the facts. Cyc. of Automobile Law (Huddy,

9th ed.), 5-6, sec. 161, pp. 309, 310, and 311, is as follows: "Common carriers are bound to exercise a high degree of care for the safety of their passengers, or, as sometimes expressed, the highest degree of care. However, a carrier of passengers does not insure their safety. While the operator of a public automobile is obligated to exercise a high degree of care, he is not charged with the necessity, either of possessing super-human powers of anticipation or of exercising such powers in a threatened emergency."

In *Lambeth v. R. R.,* 66 N. C., 494 (498), it is said: "The policy of the law which is ever solicitous for the protection of human life, requires common carriers who have charge of the safety of passengers to use a high degree of care to guard against probable injury."

In *Overcash v. Electric Co.,* 144 N. C., 572 (577), citing numerous authorities: "This Court has uniformly held, and in that respect it is in harmony with other courts and approved text-writers, that a derailment of a railway train raises a presumption or makes a prima facie case of negligence—that is, a presumption that there is a defective construction or condition of the car, or the track, or the mode of operation." . . . At p. 579: "When a common carrier undertakes to carry passengers, the law imposes upon it, the duty of exercising the highest practicable degree of care, to provide safe modes of transportation and to keep them in good and safe condition."

The defendants' prayers of instruction given by the court below was perhaps stronger than it was entitled to. The motion of defendants for new trial for newly discovered evidence, we do not think can be sustained. In *Johnson v. R. R.,* 163 N. C., 431 (453 and 4), the principle is laid down as follows, citing numerous authorities: "Applications of this kind, as we have held, should be carefully scrutinized and cautiously examined, and the burden is upon the applicant to rebut the presumption that the verdict is correct and there has been a lack of due diligence. 14 Am. and Eng. Enc. and Pr., 790. We require, as prerequisite to the granting of such motions, that it shall appear by the affidavit: (1) That the witness will give the newly discovered evidence: (2) that it is probably true; (3) that it is competent, material, and relevant; (4) that due diligence has been used and the means employed, or that there has been no laches, in procuring the testimony at the trial; (5) that it is not merely cumulative; (6) that it does not tend only to contradict a former witness or to impeach or discredit him; (7) that it is of such a nature as to show that on another trial, a different result will probably be reached and that the right will prevail."

We think at least the prerequisite is lacking in this case, (4) *supra,* "That due diligence has been used and the means employed, or that there has been no laches, in procuring the testimony at the trial." The

plaintiff contended that her injury in her back came from the wreck. Plaintiff, prior to the trial, submitted herself to a complete searching examination by physicians selected by defendants. After the verdict, defendants based their motion for a new trial on the ground that the injury came from previous trouble in her back, that they had not discovered until after the trial. Without detailing the evidence, the plaintiff after the motion, had an examination of herself made by Dr. A. Wylie Moore, an eminent physician whose affidavit, in part is as follows: "The affiant further states he has made a thorough examination of the plaintiff's back for the purpose of ascertaining the condition of the right lumbar-sacral joint, and the right sacro iliac joint, and the cause of an abnormal condition existing therein." While it is true, as a general proposition, that a focus of infection in any part of the body (principally in the tonsils) can cause arthritis, it is my opinion in this case, based upon a thorough examination of the patient, that the condition in the plaintiff's lumbar and sacro iliac joints is not due to, or caused by, any inflammation of the cervix which she may have had. As above stated, such inflammation must have been of a mild character. Certainly no infection of any kind could possibly have caused the luxation of the sacro iliac joint which I find in the plaintiff. This luxation of the joint could only be caused by an extreme excursion of the components of the joint. Further, in reference to the arthritis, it is my opinion that if this had been due to focal infection, in all probability it would have invaded other joints of the body. It is my opinion, therefore, that the cause of the abnormal condition in the two joints of the plaintiff's back is due to some external force distorting or straining these joints."

Plaintiff had a prior automobile accident and brought an action to recover damages, some years before, but from the affidavits in the record, the injury from this action, was not alleged to be in her back. It was further contended by defendants that the plaintiff had been treated by Dr. Oren Moore for a chronic pelvic infection. The plaintiff testified, in regard to this: "That at the time of this submitting to said examination, the affiant told Dr. Wishart that she had been treated by Dr. Oren Moore and Dr. J. L. Ranson: that Dr. Moore did not ask her about every ailment she had ever had, and did not request a complete medical history; that the affiant did not mention the minor pelvic inflammation heretofore referred to, because of the fact that it had been of minor character and of temporary duration, and the plaintiff had recovered from it; and because of the further fact, that it never occurred to the plaintiff that such condition had anything whatever to do with the condition in which she found herself after the wreck; that the affiant had no intention, or purpose whatever to conceal, either from the

defendants, or from the doctors any information in reference to that condition, but on the contrary, she answered all questions put to her fully, frankly and truthfully."

The court below made the following order: "This case coming on to be heard before his Honor, Frank S. Hill, judge presiding, at the Special Term of Mecklenburg Superior Court, beginning 30 October, 1933, upon the motion duly filed herein by the defendants on 10 November, 1933, to set aside the judgment, heretofore entered herein, upon the ground of newly discovered evidence; and said motion of the defendants being heard during the same term of court at which said judgment was entered; and the plaintiff and the defendants having offered affidavits upon said hearings; and the court having duly considered said affidavits, and having heard argument of counsel:

"Now, therefore, it is hereby considered, ordered and decreed that the said motion of the defendants, be, and it hereby is, overruled."

We think under the facts and circumstances of this case, the matter was in the sound discretion of the court below. *S. v. Lea,* 203 N. C., 316. The last contention of defendant: "That the court erred in finding that the surety on the supersedeas bond referred to in the record, is not sufficient surety and requiring the defendant to file a supersedeas bond with another surety."

N. C. Code, 1931 (Michie), section 650, in part, is as follows: "If the appeal is from a judgment directing the payment of money, it does not stay the execution of the judgment unless a written undertaking is executed on the part of the appellant, by one or more sureties, to the effect that if the judgment appealed from, or any part thereof, is affirmed, or the appeal is dismissed, the appellant will pay the amount directed to be paid by the judgment, or the part of such amount as to which the judgment shall be affirmed, if affirmed only in part, and all damages which shall be awarded against the appellant upon the appeal. Whenever it is satisfactorily made to appear to the court that since the execution of the undertaking the sureties have become insolvent, the court may, by rule or order, require the appellant to execute, file and serve a new undertaking, as above. In case of neglect to execute such undertaking within twenty days after the service of a copy of the rule or order requiring it, the appeal may, on motion to the court, be dismissed with cost. . . . The perfecting of an appeal by giving the undertaking mentioned in this section stays proceedings in the court below upon the judgment appealed from," etc.

The appeal to this Court was not dismissed. For the reasons given, the judgment must be reversed as to Queen City Lines, Incorporated, and the judgment as to the Queen City Coach Company

Affirmed.